UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOHN B. CAPPONI as Administrator of the Estate
of LOUISE THERESA CAPPONI,

                       Plaintiff,

             -against-

JOANN M. MURPHY, WILLOW LANE ASSOCIATES,
LP, DENNIS CAPPONI and COUNTRY BANK,

                  Defendants.
--------------------------------------------------------------------X

**ECF CASE**

Case No.:
08 Civ. 4449(LTS)(DFE)

**DECLARATION**

     EDWARD COHN hereby declares as follows:

     1.     I am a member of the bar of this Court, and of the firm IRWIN, LEWIN, COHN & LEWIN, P.C., attorneys for **JOHN B. CAPPONI as Administrator of the Estate of LOUISE THERESA CAPPONI** (hereinafter, "Plaintiff"), and thus, I am familiar with all of the facts and circumstances in this action.

     2.     This declaration is submitted in support of the Plaintiff's motion to dismiss the counterclaims contained in Defendants' Answer, dated July 25, 2008, pursuant to Federal Rules of Civil Procedure (hereinafter, "FRCP") 12(b)(1) and 12(b)(6). Additionally, Plaintiff seeks to disqualify Defendants' counsel from representing Defendants due to the fact that (a) Defendants have conflicting interests and (b) defense counsel will be called as a witness in this proceeding.

PLAINTIFF'S MOTION TO DISMISS

     3.     Plaintiff, JOHN B. CAPPONI as Administrator of the Estate of LOUISE THERESA CAPPONI, commenced the instant action for conversion, an accounting and other

related relief as a result of Defendants' failure to distribute monies rightfully belonging to LOUISE THERESA CAPPONI (hereinafter, "Decedent" and "Louise Capponi") during her lifetime and now to her Estate. (Annexed hereto as "Exhibit A" is Plaintiff's Amended Complaint, dated May 21, 2008)

4.      On or about July 25, 2008, Defendants, represented by Stewart A. McMillan, Esq. of the law firm of McMillan, Constable, Maker & Perone, LLP served an answer and counterclaims.[1] (Annexed hereto as "Exhibit B" is Defendants' Answer and Counterclaims, dated July 25, 2008)

5.      The following facts are not in dispute. WILLOW LANE ASSOCIATES, LP (hereinafter, "WILLOW ASSOCIATES") was a real estate holding company which owned the real property known as 3111 Willow Lane, in the County of Bronx, State of New York. (hereinafter, the "Premises") (See, Exhibit B, pg. 10, ¶36) Louise Capponi had a 20% partnership interest in WILLOW ASSOCIATES. (See, Exhibit B, pg. 10, ¶35) WILLOW ASSOCIATES sold the Premises prior to August 9, 2005 and Defendants' concede Decedent's Estate is entitled to at least $216,000 as a result of the sale of the Premises.[2] (Annexed hereto as "Exhibit C" is the affidavit of Joann Murphy, dated August 9, 2005, See ¶31; See, also, Exhibit B, pg. 10, ¶35) Decedent died on March 11, 2007 while residing in the Commonwealth of Virginia. (See, Exhibit B, pg. 7, ¶¶1 and 2)

6.      On May 16, 2007, John Capponi was granted Letters of Administration by the Circuit Court of the County of Clarke in the Commonwealth of Virginia in connection with the

---

[1] Defendants' Answer contains paragraphs 1-31 and Defendants' Counterclaims contain paragraphs 1-84. As Defendants' Answer has duplicative paragraph numbers, in referring to Defendants' Answer, references will be designated as "Exhibit B, pg. " ", paragraph " ¶". For example, Exhibit B, pg. 10, ¶35
[2] Defendants admit Decedent's equity interest in WILLOW ASSOCIATES entitled her to $216,000 after the closing on the sale of the Premises, however, Plaintiff does not concede Decedent's interest is limited to $216,000. Plaintiff reserves its right to an accounting in order to determine Decedent's interest.

Estate of Louise Theresa Capponi. (Annexed hereto as "Exhibit D" is a copy of the Certification of Appointment) While Defendants deny in their Answer, knowledge or information sufficient to form a belief as to whether John Capponi was granted Letters of Administration in the Virginia proceeding, they never appeared in the Virginia action and never opposed the granting of Letters of Administration to John Capponi. (See Exhibit A, pg. 1 ¶ 2, and Exhibit B pg. 1 ¶1)

7.    Possession of the proceeds representing Decedent's interest in WILLOW ASSOCIATES, which Defendants admit belong to the Decedent, is the central issue before the Court. (See, Exhibit B, pg. 10, ¶35) However, Defendants have attempted to obfuscate this issue by raising claims against John Capponi as an individual.

8.    Plaintiff's motion to dismiss Defendants' counterclaims should be granted pursuant to FRCP 12(b)(1) and 12(b)(6) because John Capponi is not a party to this action.   The Defendants' allegations against John Capponi, in connection with acts allegedly committed before he was named administrator of his mother's Estate, are not the proper subject of a counterclaim under the FRCP. A review of Defendants' counterclaims indicate that all of the acts complained of took place prior to the death of Louise Capponi.[3]  (See, Exhibit B, pgs. 11-12, ¶¶41-54) The allegations that John Capponi improperly handled monies belonging to his mother are the claims of the Estate of Louise Capponi, not the defendants in this proceeding.

9.    Further, none of the claims raised in the counterclaims allege that the Estate of Louise Capponi wrongfully appropriated monies belonging to any of the Defendants. As such, the counterclaims have nothing to do with the Estate of Louise Capponi or JOHN B. CAPPONI as Administrator of the Estate of Louise Capponi.

---

[3] Plaintiff denies all of the allegations contained in Defendants' Counterclaims and reserves its right to contest them in the proper forum, when and if any such claims are properly asserted.

10.    This Court should also note that none of these claims have been raised by any of the Defendants in the Circuit Court of the County of Clarke in Virginia. Furthermore, if this Court were to hear these unrelated claims it would cause unnecessary delay and confusion in terms of the resolution of this matter.

11.    All of the claims raised by Defendants in their counterclaims are claims involving the administration of the Estate of Louise Capponi and should be dismissed as the Estate proceeding commenced in Virginia, one year prior to the instant action, is the proper forum to deal with claims regarding the assets of Louise Capponi. Furthermore, this Court lacks subject matter jurisdiction of the claims due to the fact that the "probate exception" precludes the Federal Court from assuming jurisdiction over the administration of the Estate. (See, Point I (B) in Plaintiff's Memorandum of Law)


PLAINTFF'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL—Conflicts of Interest

12.    Plaintiff is also moving to disqualify Defendants' counsel in view of the obvious and irreconcilable conflicts of interest that exist between the Defendants.

13.    For instance, on August 9, 2005, Defendant, WILLOW ASSOCIATES, general partner, Defendant JOANN MURPHY, swore under oath that she gave a check for $216,000 rightfully belonging to Decedent to Defendant, DENNIS CAPPONI; and that the $216,000 was deposited into an interest bearing account at Defendant, COUNTRY BANK. (See, "Exhibit C" ¶¶31 and 32)

14.    On August 9, 2005, Antonette Polcini, sister of Louise Capponi and JOANN MURPHY, swore under oath that JOANN MURPHY gave the check to DENNIS CAPPONI and

that the check was deposited into an interest bearing account at COUNTRY BANK. (Annexed hereto as "Exhibit E" is a copy of the Affidavit of Antonette Polcini, See ¶31)

15.    On August 20, 2005, Defendant, DENNIS CAPPONI, swore under oath that he received a check made payable to his mother in the sum of $216,000, but that he did not deposit the check into an escrow account and he did not give the check to his mother. (Annexed hereto as "Exhibit F" is a copy of the Affidavit of DENNIS CAPPONI, See ¶¶25-26)

16.    As set forth in Plaintiff's Amended Complaint and admitted in Defendants' Answer, in a letter dated September 10, 2007, William J. Burke, the President of COUNTRY BANK wrote, "We have checked our files and have no account under the name of Louise T. Capponi." (See, Exhibit A, ¶31 and Exhibit B, pg. 2, ¶5) The chairman, shareholder, owner, officer and of Defendant COUNTRY BANK is JOANN MURPHY's husband. (See, Exhibit A, ¶¶ 27 & 28 and Exhibit B, pg. 2, ¶ 5) In view of the fact that Defendant DENNIS CAPPONI is a distributee of Louise Capponi, it is inconceivable that one attorney can represent all four of the Defendants.

17.    Additionally, the location of the money is a mystery, as is the chain of custody of the proceeds of the sale of the Premises since the closing of the Premises took place in June 2005.

18.    Plaintiff seeks an accounting from WILLOW ASSOCIATES and the other Defendants as to the monies rightfully due to the Estate, therefore it is disingenuous for the attorney representing WILLOW ASSOCIATES and its general partner to claim that there is no conflict in his representing DENNIS CAPPONI who is also a distributee of Louise Capponi. This information is especially disconcerting as Defendants' counsel recently disclosed that due to the fact that Defendants refused to turn over the proceeds representing the Decedent's interest in

WILLOW ASSOCIATES and failed to pay taxes due as a result of the sale, there is currently due

to the Federal and New York State governments, approximately $40,000 in penalties and

interest.  (See below and Point II (B) of Plaintiff's Memorandum of Law)


PLAINTFF'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL—Trial Witness

    19.    Lastly, disqualification of Defendants' counsel is necessary because Stuart A.

McMillan, Esq. will be a witness in this action.  Mr. McMillan was the attorney for WILLOW

ASSOCIATES at the time of the closing on the Premises in June 2005. Mr. McMillan was also

the attorney for DENNIS CAPPONI, the petitioner in the Article 81 guardianship proceeding

regarding Louise Capponi in Bronx County, which was commenced in August 2005. (A copy of

the Order of the Supreme Court, Bronx County dated June 5, 2006 is annexed hereto as "Exhibit

G")

    20.    In a letter dated November 17, 2006, Mr. McMillan acknowledged that he and

John Capponi continued negotiations relating to the financial affairs of Louise Capponi after the

Article 81 Order dated June 5, 2006.  (Annexed hereto as "Exhibit H" is a copy of the letter

dated November 17, 2006, hereinafter "the McMillan Letter")

    21.    In the McMillan Letter, Stewart McMillan also stated, "I will contact Mr.

Kaufman (Louise Capponi's accountant and the accountant for Willow Associates), and see to it

your mother's interests are protected with respect to New York State and/or Federal Income

Taxes which may be owed."  (See, Exhibit H)

    22.    In a letter to the undersigned dated August 21, 2008, Mr. McMillan wrote that

according to Mr. Kaufman, "…the amount currently owed could be as much as $40,000 dollars

in excess of that, including interest and penalties." (Annexed hereto as "Exhibit I" is a copy of the letter dated November August 21, 2008)

23.     Clearly it will be necessary to call Mr. McMillan as a witness as it appears that Defendants' failure to distribute monies belonging to Louise Capponi and the failure of Mr. McMillan and the parties who controlled the proceeds to pay the taxes has resulted in significant liability to the United States and New York State taxing authorities.

24.     Furthermore, Mr. McMillan may be called to testify regarding the Article 81 proceeding. In that proceeding John Capponi appeared pro se. Both during and after the proceeding, Mr. McMillan and John Capponi had discussions and negotiations. Petitioner DENNIS CAPPONI ultimately consented to the appointment of John Capponi as guardian.

25.     Notwithstanding Mr. McMillan's allegations in the Answer, John Capponi was never appointed guardian of his mother as he could not fulfill the Supreme Court's requirement that he post a $219,111.32 bond. Upon receipt of the Order of the Court, John Capponi learned for the first time that the filing of a bond in the sum of $219,111.32 was a condition precedent to his appointment. (See, Exhibit G, pg. 3)

26.     Defendants' Answer contains allegations that John Capponi intentionally failed to be bonded because he did not wish to file periodic accountings. (See, Exhibit B, ¶33) In light of this dispute, Mr. McMillan may be called to testify.

27.     For all of the foregoing reasons and as set forth in the accompanying Memorandum of Law, it is clear that Defendants' counterclaims must be dismissed and defense counsel must be disqualified from representing Defendants in view of the many conflicts of interests between them and further due to the fact that Defendants' counsel will be called as a witness in connection with this matter.

I declare under penalty and perjury, pursuant to 28 U.S.C. § 1746 that the foregoing statements made by me are true and correct.

Dated: New York, New York
        August 28, 2008

$$\underline{\hspace{2cm}S/\hspace{2cm}}$$
                    Edward Cohn, Esq.

A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN B. CAPPONI as Administrator of the Estate
of LOUISE THERESA CAPPONI,

                **AMENDED**
                **COMPLAINT**

                Plaintiff,

                08 Civ. 4449(LTS)(DFE)
- against -
                *ECF CASE*

JOANN M. MURPHY, WILLOW LANE ASSOCIATES, LP,
DENNIS CAPPONI and COUNTRY BANK,

                Defendants.
------------------------------------------------------------------------X

       Plaintiff, JOHN B. CAPPONI as Administrator of the Estate of LOUISE THERESA

CAPPONI, ("the ADMINISTRATOR"), complaining of defendants, JOANN M. MURPHY,

WILLOW LANE ASSOCIATES, LP, DENNIS CAPPONI and COUNTRY BANK, respectfully

shows to this Court alleges:

### JURISDICTION AND PARTIES

    1.     Louise Theresa Capponi ("Decedent"), was a resident of the State of Virginia

*AKI* when she died on March 11, 2007.

    2.     On May 16, 2007 JOHN B. CAPPONI, ("Administrator"), the son of the

decedent, duly qualified and was granted Letters of Administration ("Letters of Administration"),

by the Circuit Court of the County of Clarke, State of Virginia, in connection with the Estate of

Louise Theresa Capponi. (Annexed hereto as Exhibit A is a copy of the certification of

appointment).

3.    Upon information and belief the aforementioned Letters of Administration are currently in full force and effect.

4.    At all times hereinafter mentioned, WILLOW LANE ASSOCIATES, was a partnership organized under and by virtue of the laws of the State of New York.

5.    On or about July 6, 2000, WILLOW LANE ASSOCIATES amended its name to WILLOW LANE ASSOCIATES, LP, ("WILLOW ASSOCIATES"), a limited partnership organized under and by virtue of the laws of the State of New York.

6.    At all times hereinafter mentioned, defendant, JOANN MURPHY, was the general partner of WILLOW ASSOCIATES.

7.    At all times hereinafter mentioned, defendant, JOANN MURPHY, was a resident of the State of New York.

8.    At all times hereinafter mentioned, each of the limited partners of WILLOW ASSOCIATES, Joseph M. Murphy, Jr., Carolyn T. Murphy, Mary J. Murphy, Patricia A. Macgillivray and Antonette Polcini, were residents of the State of New York.

9.    At all times hereinafter mentioned, defendant DENNIS CAPPONI, was a resident of the State of New York.

10.    At all times hereinafter mentioned, defendant, COUNTRY BANK, was a banking institution organized under and by virtue of the laws of the State of New York.

11.    This Court has subject matter jurisdiction of this action  pursuant to 28 U.S.C. §1332(a) in that it is an action between a citizen of a state, and a citizen or subject of a foreign state and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs

and interest.

## **BACKGROUND**

12.    At the time of her death and for some time prior thereto, Decedent was a limited partner in WILLOW ASSOCIATES

13.    Upon information and belief, Decedent's interest in the entity WILLOW ASSOCIATES was at all times no less than 20% of the entity.

14.    WILLOW ASSOCIATES was the owner of certain real property known as 3111 Willow Lane, in the County of the Bronx, State of New York, as well as certain personal property as well.

15.    On or about June 10, 2005, WILLOW ASSOCIATES transferred the real property described hereinabove, to Willow Properties LLC.

16.    Upon information and belief, defendant JOANN MURPHY was a general partner of the entity WILLOW ASSOCIATES.

17.    Decedent reposed her trust and confidence in JOANN MURPHY as the general partner of WILLOW ASSOCIATES.

18.    At all times mentioned Decedent had a right to rely on defendant JOANN MURPHY in her capacity as general partner of defendant WILLOW ASSOCIATES.

19.    Prior to her death, Decedent demanded of JOANN MURPHY and of WILLOW ASSOCIATES that she be provided with an accounting of the activities of WILLOW ASSOCIATES, but she has never received same.

20.    Subsequent to Decedent's death, on a number of occasions the ADMINISTRATOR, demanded of JOANN MURPHY and of WILLOW ASSOCIATES that he

3

be provided with an accounting of the activities of WILLOW ASSOCIATES, but he never received same.

21.     On or about August 9, 2005, defendant JOANN MURPHY, swore under oath that in her capacity as general partner of WILLOW ASSOCIATES, she gave a check in the sum of $216,000 rightfully belonging to Louise Theresa Capponi, to defendant DENNIS CAPPONI.

22.     In her affidavit dated August 9, 2005, defendant JOANN MURPHY, also swore under oath that the aforementioned check in the sum of $216,000 was deposited into an interest bearing account at defendant COUNTRY BANK.

23.     On or about August 20, 2005, defendant DENNIS CAPPONI swore under oath that he received a check, made payable to Louise Theresa Capponi in the sum of $216,000, representing her interest in defendant WILLOW ASSOCIATES, but that he did not give it to Louise Theresa Capponi.

24.     On or about August 20, 2005, defendant DENNIS CAPPONI swore under oath that he did not deposit the aforementioned check in an escrow account on behalf of Louise Theresa Capponi.

25.     In an affidavit dated August 9, 2005, Antoinette Polcini, swore under oath that defendant JOANN MURPHY gave a check in the sum of $216,000 which represented proceeds rightfully belonging to Louise Theresa Capponi to defendant DENNIS CAPPONI.

26.     Antoinette Polcini also swore under oath on August 9, 2005, that the aforementioned check in the sum of $216,000 was deposited into an interest bearing account at defendant COUNTRY BANK.

27.     Upon information and belief Joseph M. Murphy is the husband of defendant

4

JOANN MURPHY.

28.    Upon information and belief Joseph M. Murphy is the Chairman and a shareholder, owner, officer and director of defendant COUNTRY BANK.

29.    On or about June 20, 2007, an attorney acting of behalf of Plaintiff, provided a certification from the Deputy Clerk of the Circuit Court of the County of Clarke, State of Virginia, (with a raised seal), indicating that JOHN B. CAPPONI was the duly appointed Administrator of the Estate of Decedent and demanded on behalf of the Administrator that defendant COUNTRY BANK, turn over the $216,000 plus interest rightfully belonging to the Estate of Louise T. Capponi. (Annexed hereto as Exhibit B is a copy of the letter of Hanna Lee Rodriquez, Esq., demanding $216,000 plus interest).

30.    On or about December 13, 2007, a second attorney acting of behalf of Plaintiff again provided a certification from the Deputy Clerk of the Circuit Court of the County of Clarke, State of Virginia, (with a raised seal), indicating that JOHN B. CAPPONI was the duly appointed Administrator of the Estate of Decedent and again demanded in writing that defendant COUNTRY BANK, turn over the $216,000 plus interest rightfully belonging to the Estate of Louise T. Capponi. (Annexed hereto as Exhibit C is a copy of the letter of Joann T. Palumbo, Esq., demanding $216,000 plus interest).

31.    In a letter dated September 10, 2007, William J. Burke, the President of defendant COUNTRY BANK, wrote "We have checked our files and have no account under the name of Louise T. Capponi." (Annexed hereto as Exhibit D is a copy of the aforementioned letter).

32.    Other than the foregoing letter from defendant COUNTRY BANK, no information has been provided by said defendant to either of the attorneys representing Plaintiff.

5

## AS A FIRST CLAIM FOR RELIEF

### (Conversion)

33.    Plaintiff repeats, reiterates and realleges each and every allegation set forth hereinabove, as if set forth herein at length.

34.    Plaintiff in his capacity as Administrator of the Estate of Louise T. Capponi, is lawfully entitled to the sum of $216,000 which was allegedly delivered by defendant WILLOW ASSOCIATES to defendant DENNIS CAPPONI.

35.    Plaintiff has demanded from defendants JOANN MURPHY, DENNIS CAPPONI, WILLOW ASSOCIATES  and COUNTRY BANK that they turn over the sum of $216,000 with interest, but said defendants have refused to do so.

36.    Defendants JOANN MURPHY, DENNIS CAPPONI, WILLOW ASSOCIATES and COUNTRY BANK, have no right to the aforementioned monies.

37.    Defendants JOANN MURPHY, DENNIS CAPPONI, WILLOW ASSOCIATES and COUNTRY BANK, have converted the Plaintiff's monies.

38.    Plaintiff has been damaged in a sum of money, no less than $216,000 plus interest from June 10, 2005.

## AS A SECOND CLAIM FOR RELIEF

### (Unjust Enrichment)

39.    Plaintiff repeats, reiterates and realleges each and every allegation set forth hereinabove, as if set forth herein at length.

40.    Defendants JOANN MURPHY, DENNIS CAPPONI, WILLOW ASSOCIATES

6

and COUNTRY BANK, have no legally cognizable right to the $216,000 referred to

hereinabove.

41.    By reason thereof, defendants JOANN MURPHY, DENNIS CAPPONI,

WILLOW ASSOCIATES and COUNTRY BANK have been unjustly enriched in a sum of

money no less than $216,000 plus interest from June 10, 2005.

42.    Plaintiff has no adequate remedy at law.

43.    Plaintiff has been damaged in a sum of money, no less than $216,000 plus interest

from June 10, 2005.

## AS A THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

44.    Plaintiff repeats, reiterates and realleges each and every allegation set forth

hereinabove, as if set forth herein at length.

45.    Decedent relied on defendant JOANN MURPHY to act properly, fairly and

equitably in her capacity as general partner of WILLOW ASSOCIATES.

46.    At all times hereinbefore mentioned, Plaintiff Administrator relied on defendant

JOANN MURPHY to act properly, fairly and equitably in her capacity as general partner of

WILLOW ASSOCIATES.

47.    In failing to make the payment set forth above to Decedent or the Administrator,

(and other payments as determined by an accounting), defendant JOANN MURPHY breached

her fiduciary duty to the Decedent.

48.    For the reasons set forth hereinabove, Plaintiff has been damaged in a sum of

money, no less than $216,000 plus interest from June 10, 2005.

7

## AS A FOURTH CLAIM FOR RELIEF

### (Accounting)

49.    Plaintiff repeats, reiterates and realleges each and every allegation set forth hereinabove, as if set forth herein at length.

50.    In her capacity as a partner of defendant WILLOW ASSOCIATES, Decedent was entitled to and demanded an accounting of the affairs and activities of WILLOW ASSOCIATES.

51.    In his capacity as Administrator of the Estate of Louise Theresa Capponi, Plaintiff has demanded an accounting of the affairs and activities of WILLOW ASSOCIATES.

52.    Neither Decedent nor Plaintiff has ever received an accounting of WILLOW ASSOCIATES.

53.    Plaintiff demands an accounting of the affairs and activities of WILLOW ASSOCIATES from its formation to present.

54.    That an accounting be had between the Plaintiff and the Defendants, WILLOW ASSOCIATES and JOANN MURPHY of their actions as collector of rents and manager of the property known as 3111 Willow Lane.

55.    That the Defendants WILLOW ASSOCIATES and JOANN MURPHY be compelled to turn over to the Plaintiff any money, and the value of any property, which the said Defendants have wrongfully taken and/or withheld from Decedent or Decedent's estate or wasted, with interest.

56.    Plaintiff has no adequate remedy at law.

8

**WHEREFORE,** plaintiff demands judgment on the First Claim for Relief in a sum of money no less than $216,000, plus interest from June 10, 2005; on the Second Claim for Relief in a sum of money no less than $216,000, plus interest from June 10, 2005; on the Third Claim for Relief in a sum of money no less than $216,000, plus interest from June 10, 2005; and on the Fourth Claim for Relief demanding an accounting and the recovery of any sums of money rightfully belonging to the Estate of Louise Theresa Capponi, together with the costs and disbursements of this action.

Dated:  New York, New York
        May 21, 2008

        Yours etc.,

        IRWIN, LEWIN, COHN & LEWIN, P.C.

        By:

        Edward Cohn (EC-2225)
        Attorneys for Plaintiff
        845 Third Avenue Suite 1400
        New York, New York 10022
        (212) 759-2600
        edcohn@ilcllaw.com

B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN B. CAPPONI as Administrator of the Estate
of LOUISE THERESA CAPPONI,

Docket No.:
08 Civ. 4449(LTS)(DFE)

Plaintiff,

- against -                                                **VERIFIED ANSWER**

JOANN M. MURPHY, WILLOW LANE ASSOCIATES, LP,
DENNIS CAPPONI and COUNTRY BANK,

                                        Defendants.
------------------------------------------------------------X

The Defendants, Joann M. Murphy, Willow Lane Associates, LP, Dennis Capponi and

Country Bank, (hereinafter the "Defendants") by and through their attorneys, McMillan, Constabile,

Maker & Perone, LLP, with Law Offices at 2180 Boston Post Road, Larchmont, New York 10538

hereby answers the Plaintiff's Amended Complaint as follows:

## JURISDICTION AND PARTIES

1.      The Defendants deny knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraphs numbered, "1", "2", "3", "5" and "11" of Plaintiff's complaint

and directs all questions of law to the Court and questions of fact to the trier of fact.

2.      The Defendants admit the allegations contained in paragraphs numbered "4", "6", "7", "8",

"9" and "10" of Plaintiff's Complaint.

## BACKGROUND

3.      The Defendants hereby repeats and reiterates each and every admission and denial heretofore

made to paragraphs "1 through 11" with the same force and effect as if more fully set forth herein.

4.      The Defendants deny knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraphs numbered, "13", "15", "17", "18", "19", "20", "21", "22",

"23", "24", "25", "26", and "32" of Plaintiff's complaint and directs all questions of law to the Court

and questions of fact to the trier of fact.

5.     The Defendants admit the allegations contained in paragraphs numbered "12", "14", "16", "27", "28", and "31" of Plaintiff's Complaint.

6.     The Defendants deny the allegations contained in paragraphs numbered "29" and "30" of Plaintiff's Complaint.

## AS AND FOR AN ANSWER TO THE FIRST CLAIM FOR RELIEF
### (CONVERSION)

7.     The Defendants hereby repeat and reiterate each and every admission and denial heretofore made to paragraphs "1 through 32" with the same force and effect as if more fully set forth herein.

8.     The Defendants admit the allegations contained in paragraph number "35" of Plaintiff's Complaint.

9.     The Defendants deny the allegations contained in paragraphs numbered "34", "36", "37" and "38" of Plaintiff's Complaint.

## AS AND FOR AN ANSWER TO THE SECOND CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

10.     The Defendants hereby repeat and reiterate each and every admission and denial heretofore made to paragraphs "1 through 38" with the same force and effect as if more fully set forth herein.

11.     The Defendants deny the allegations contained in paragraphs numbered "40", "41", "42" and "43" of Plaintiff's Complaint.

## AS AND FOR AN ANSWER TO THE THIRD CLAIM FOR RELIEF
## (BREACH OF FIDUCIARY DUTY)

12.     The Defendants hereby repeat and reiterate each and every admission and denial heretofore made to paragraphs "1 through 43" with the same force and effect as if more fully set forth herein.

13.     The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "45" and "46" of the Plaintiff's Complaint and directs all questions of law to the Court and questions of fact to the trier of fact.

14.     The Defendants deny the allegations contained in paragraphs numbered "47" and "48" of Plaintiff's Complaint.

## AS AND FOR AN ANSWER TO THE FOURTH CLAIM FOR RELIEF
## (ACCOUNTING)

15.     The Defendants hereby repeat and reiterate each and every admission and denial heretofore made to paragraphs "1 through "48" with the same force and effect as if more fully set forth herein.

16.     The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "50", "51", "53", "54" and "56" of the Plaintiff's Complaint and directs all questions of law to the Court and questions of fact to the trier of fact.

17.     The Defendants admit the allegations contained in paragraph number "52" of Plaintiff's Complaint.

18.     The Defendants deny the allegations contained in paragraph number "55" of Plaintiff's Complaint.

3

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

19.    The Virginia Proceeding is void pursuant to the Doctrine of Undue Influence

### AS AND FOR A SECOND SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

20.    The Virginia Proceeding is void due to Fraud.

### AS AND FOR A THIRD SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

21.    The Plaintiff's claims are barred, in whole or in part, by the Statute of Limitations.

### AS AND FOR A FOURTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

22.    The Plaintiff's claims are barred, in whole or in part, by the Doctrines of Laches, Waiver and/or Estoppel.

### AS AND FOR FIFTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

23.    The Court does not have personal jurisdiction over one or more of the answering Defendants.

4

### AS AND FOR A SIXTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

24.    This Court does not have subject matter jurisdiction over one or more of the answering Defendants.

### AS AND FOR A SEVENTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

25.    The Plaintiff has failed to join all necessary and/or indispensable parties for complete relief to be afforded in this action.

### AS AND FOR AN EIGHTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

26.    The Defendants' obligations are defined by, limited by, controlled by and restricted by applicable New York State Law.

### AS AND FOR A NINTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

27.    The Plaintiff's claims are barred and/or restricted by the Doctrine of "Unclean Hands".

### AS AND FOR A TENTH SEPARATE
### AND COMPLETE AFFIRMATIVE DEFENSE

28.    The Circuit Court of Clarke County Virginia has no jurisdiction over the money which is the subject of this lawsuit.

## AS AND FOR AN ELEVENTH SEPARATE
## AND COMPLETE AFFIRMATIVE DEFENSE

29.     The Complaint does not state a cause of action against some or all of the named

Defendants.


## AS AND FOR A TWELFTH SEPARATE
## AND COMPLETE AFFIRMATIVE DEFENSE

30.     The Plaintiff has failed to properly commence a cause of action against the answering

Defendants.


## AS AND FOR A THIRTEENTH SEPARATE
## AND COMPLETE AFFIRMATIVE DEFENSE

31.     This Court doe not have jurisdiction over the money which is the subject of this lawsuit.

## AS AND FOR A COUNTER CLAIM
### (FACTS COMMON TO ALL COUNTS)

1.     The deceased Plaintiff, Louise Theresa Capponi, (hereinafter "Louise"), died intestate on March 11, 2007 at Winchester Medical Center, located at 1840 Amherst Street in County of Frederick, Winchester, Virginia.

2.     At or about the time of her death, Louise's was staying at The Mayfair House, a nursing home located at 413 McClellan Street in the Town of Berryville, County of Clarke, State of Virginia.

3.     Louise's closet living heirs at the time of her death were her sons, John Capponi and the Defendant, Dennis Capponi.

4.     Louise's next closest living heirs at the time of her demise were her sisters, the Defendant, Joann M. Murphy and Annette Polcini.


## LOUISE'S DOMICILE

5.     Louise took up residence at 3111 Willow Lane in the County of Bronx, State of New York in 1972.

6.     Louise lived in the building at 3111 Willow Lane, until approximately 2000.

7.     Throughout her life all of Louise's family and friends lived withing the State of New York, mostly within Bronx County.

8.     Due to ill health and infirmity Louise left the Willow Lane residence in or about the year 2000 but continued to reside in Bronx County at numerous nursing homes and extended care facilities, including Riverdale Nursing Home; Beth Abraham Home and Hospital for the Aged; The Jewish Home in New York and the Throggs Neck Extended Care Facility.

9.     Immediately prior to leaving for Virginia, Louise lived in a facility in Bronx County, The Methodist Home for the Aged, located at 4499 Manhattan College Parkway, Riverdale, New York.

10.    At or about the end of 2006, Louise's son, the Plaintiff, John Capponi, moved Louise to a

7

nursing home known as The Mayfair House located in Clarke County Virginia.

11.    Upon information and belief Louise was too ill and/or infirm to give valid consent for a move to Virginia.

12.    Upon information and belief, the Plaintiff, John Capponi, moved Louise to Virginia anyway without first consulting any other family members.

13.    John Capponi also failed to inform the Supreme Court of the State of New York, Bronx County, that he was moving Louise to the State of Virginia, despite the fact that the plaintiff had recently been appointed Guardian over Louise following an Article 81 Hearing presided over by Honorable Judge Alexander W. Hunter, Jr. (JSC).

14.    Upon information and belief, Louise would not have wanted to go to Virginia as she had no contacts nor ties of any kind there nor did she have any family or friends who lived in Virginia, outside of John Capponi.

15.    Upon information and belief the Plaintiff, John Capponi, moved Louise to Virginia against her wishes and against her best interests and potentially caused severe and adverse effects to Louise's health.

16.    Louise died within six (6) months of being moved to a Virginia nursing home by John.


## THE BRONX SUPREME COURT ARTICLE 81 PROCEEDING

17.    On or about August 30, 2005, Louise's son, the Defendant, Dennis Capponi, filed an Article 81 Proceeding in the Supreme Court of the State of New York, Bronx County (Index No.: 91972/05) (Hon. Alexander Hunter, Jr.).

18.    At the time, Dennis Capponi sought an Order of the Bronx Supreme Court appointing him Guardian over his mother, Louise and her estate, pursuant to that proceeding due to Dennis' belief that Louise was unable to provide for her own personal needs and therefore was a person in need of

8

guardianship ("AIP").

19.     Dennis Capponi filed said Petition in order to properly safeguard Louise's person and property as she did not adequately understand and appreciate the consequences of her inabilities.

20.     At or about the time Dennis Capponi filed said Petition Louise suffered from a myriad of serious and lief threatening illnesses.

21.     At the time of the Guardianship proceeding in November 2005, Louise was in an extremely weakened state and was unable to walk without the assistance of a wheelchair.

22.     On or about November 7, 2005 a Guardianship hearing was held in the Supreme Court of the State of New York, Bronx County in front of the Honorable Judge Alexander W. Hunter, Jr.

23.     Dennis Capponi appeared as Petitioner, as did Louise's sister, the Defendant, Joann Murphy.

24.     The Plaintiff, John Capponi, appeared to contest said proceeding.

25.     Ultimately, following a hearing, Honorable Judge Alexander W. Hunter, Jr., judged Louise to be a person in need of guardianship (AIP).

26.     Following the hearing, John Capponi, was appointed guardian upon the consent of all interested parties present at the hearing, including Louise's sister.

27.     The Defendant, Dennis Capponi consented to having his brother, John Capponi, appointed as Guardian rather than himself expressly based upon the representation by John Capponi on the record that he would properly care for his mother and would file periodic accountings which would be reviewed by the Honorable Judge Alexander W. Hunter, Jr.

28.     A Judgement and Order appointing John as Guardian was duly issued by Honorable Judge Alexander W. Hunter, Jr., on or about June 5, 2006. See a copy of the Judgement and Order of the Honorable Judge Alexander W. Hunter, Jr., of the Supreme Court of the State of New York, Bronx County attached hereto at Exhibit "D" .

29.     In this way, Dennis Capponi believed both his mother's person and her estate would be adequately protected.

30.     Every single step in the process was completed except that the Plaintiff, John Capponi,

9

ultimately claimed that he could not be bonded at the very end.

31.    Accordingly, although John Capponi had been appointed Louise's Guardian following the August 30, 2005 Hearing, and Honorable Judge Alexander W. Hunter, Jr., had ruled Louise Capponi to be a person in need of guardianship, John Capponi was not bonded in the Surrogate's Court Action.

32.    In or about late 2006, John Capponi unilaterally moved Louise to the State of Virginia without notifying the Honorable Judge Alexander W. Hunter, Jr., of the Supreme Court of the State of New York, Bronx County, as required, despite the fact that Judge Hunter had ruled Louise to be an AIP.

33.    Upon information and belief, John intentionally failed to be bonded in the Bronx Guardianship Proceeding because he did not wish to have to file periodic accountings which would be reviewed by the Supreme Court, Bronx County and subject him to questions of impropriety.

## THE COMMONWEALTH OF VIRGINIA PROCEEDING

34.    On or about May 16, 2007 John B. Capponi filed a request to qualify as Administrator of Louise Capponi's Estate in the Circuit Court of Clarke County, Virginia.

## PROPERTY WHICH IS THE SUBJECT OF THE ESTATE

35.    The subject of this action concerns a check in the amount of approximately $216,000 arising out of Louise's 20% partnership interest in the Willow Lane Associates.

36.    The Willow Lane Associates was, at all times relevant hereto, a real estate holding company which previously owned the real property located at 3111 Willow Lane, Bronx, New York.

37.    As set forth in my Petition in support of the Article 81 Proceeding in front of Judge Hunter, the Defendant, Dennis Capponi, refrained from giving the aforementioned check to his mother

10

Louise due to his concern that she would not be able to handle this money responsibly due to her illness and infirmities.

38.    Denis Capponi  deposited the aforementioned check into an interest-bearing account.

39.    The aforementioned $216,000 check was the principle subject of the Article 81 Proceeding, and was duly brought to the attention of Judge Hunter.

40.    Upon information and belief, Louise  also possessed numerous other assets, both prior to and at the time of her demise, some or all of which have been misappropriated by the Plaintiff, John Capponi.

## JOHN CAPPONI'S ACTIONS

41.    On or about November 26, 2001, John Capponi obtained a Power of Attorney over Louise Capponi and her assets.

42.    John Capponi obtained said Power of Attorney when, upon information and belief, Louise was derided by ill health and infirmity and incapable of making an informed and rational decision.

43.    Upon information and belief, after John Capponi obtained said Power of Attorney, John Capponi stole or otherwise misappropriated large amounts of cash and other assets from Louise and her estate, both prior to her death and from her estate following her demise.

44.    Louise has received at least $73,000 since 1999 as yearly distribution payments based upon her 20% partnership interests in the Willow Lane Associates.

45.    Upon information and belief, this money was misappropriated by John Capponi for his own personal use without any regard for Louise's needs or best interests.

46.    Upon information and belief, Louise received as much as $370,000 in the 35 years prior to her death as yearly distribution payments based upon  her 20% partnership interests in Willow Lane Associates.

47.    Upon information and belief, John Capponi spent or otherwise dissipated a large amount of

11

these monies for his own personal gain and to Louise Capponi and her distributees' detriment.

48.     In the years prior to her death, Louise Capponi was receiving yearly cash distributions, including New York State Worker's Compensation Benefits, a pension/annuity and Social Security payments.

49.     Upon information and belief, beginning in the year 2001, John Capponi began utilizing Louise's New York State Worker's Compensation, pension/annuity and Social Security monies for his own personal gain and to Louise's detriment.

50.     As of the year 2001 Louise Capponi owned bank accounts at Chase Manhattan Bank, American Business Financial, HSBC and Northfork Bank.

51.     Upon information and belief, beginning in the year 2001, those bank accounts were are all liquidated by John Capponi for his own personal gain and to Louise's detriment.

52.     Upon information and belief, John Capponi, dissipated all of these monies against Louise's best interests and at a time when Louise was too infirm to form a consent thereto.

53.     John Capponi's actins took place at a time when he held a Power of Attorney over Louise and/or had been appointed Guardian over Louise and her estate pursuant to the prior New York state Supreme Court proceeding.

54.     Based upon all of the forgoing, this Court should order that John Capponi repay and return those monies to the estate.

12

## AS AND FOR A FIRST CAUSE OF ACTION

### (Demand for an Accounting)

55.    Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 54 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

56.    Upon information and belief, the Plaintiff, John Capponi, wrongfully and improperly expended monies belonging to Louise Capponi, both before and after her demise or to pay for expenses unrelated to Louise's well being.

57.    Upon information and belief, the Plaintiff, John Capponi, failed, neglected and/or refused to provide the books, records and accounts of the Company, to the Defendants, for their examination and inspection upon their request.

58.    The Defendants are entitled to have the Plaintiff, John Capponi provide Defendants with a full and fair accounting to determine how said monies were expended.

59.    That by reason of the foregoing Defendants are entitled to have the Plaintiff, John Capponi substantiate monies which have been removed from the Estate of Louise Capponi.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Constructive Trust)

60. Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 59 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

61. At all times relevant to this litigation, a fiduciary relationship existed between the Plaintiff and the Defendants.

62. Upon information and belief, the Plaintiff engaged in breaches of his fiduciary duties by

13

misappropriating monies from his mother and her estate and using it for his own interests and/or interests adverse to and/or unrelated to her interests.

63. That by reason of the foregoing, a constructive trust should be imposed upon the $216,000, representing the portion of Louise's Estate in New York State.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Common Law Fraud)

64.    Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 63 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

65.    The Plaintiff, made certain intentional and/or reckless misrepresentations of material fact to the Defendants, including, upon information and belief:

(a) That he would use his mother Louise Capponi's money to pay for costs related to the development and/or furtherance of Louise Capponi's interests and not for outside interests; and/or

(b) That he would provide periodic accountings of the monies within Louise Capponi's Estate to the Defendants and/or the Supreme Court, for their examination and inspection; and/or

66.    The Plaintiffs misrepresentations and/or omissions were material and were intended to induce (and did induce) the Defendants. to consent to John Capponi being granted Power of Attorney and to later being appointed Guardian over his mother Louise and her Estate.

67.    The Defendants reasonably relied upon the representations of the Plaintiff to their detriment.

14

68.     That by reason of the foregoing the Plaintiffs suffered damages in the amount of $216,000, together with interest, costs and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

69.     Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 68 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

70.     The Power of Attorney and/or Guardianship Order conferred upon John Capponi and granted him specific powers, duties and responsibilities contained therein.

71.     These documents created a fiduciary relationship pursuant to which Louise and her distributees reasonably, and in good faith, relied upon John Capponi.

72.     John Capponi breached his fiduciary duties to the Defendants, thereby causing damages by, *inter alia*:

(a)  Upon information and belief using some or  all of Louise's money for his own purposes and to her detriment; and/or

(b) Failing to provide sufficient periodic accountings; and/or

(c)  Upon information and belief, failing to keep and maintain, or cause to be kept or maintained, the requisite books, records, reports, returns and accounts of Louise's money showing the assets, liabilities, operations, transactions, and financial condition of her assets; and/or

15

(d) Failing, neglecting and/or refusing to provide the estate's books, records and accountings to the Defendants; and/or

(e) Upon information and belief, exercising gross negligence and/or recklessness in spending or authorizing the expenditure of some or all of Louise's monies; and/or

(f) Upon information and belief, knowingly and/or recklessly violating New York State and/or Federal Laws and Statutes in misappropriating Louise's monies.

73.    That by reason of the foregoing Plaintiffs suffered damages in the amount of $216,000, together with interest, costs, disbursements, and any other such relief as the Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

74.    Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 73 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

75.    Pursuant to the Power of Attorney and Guardianship Order, John Capponi took control over his mother's assets and subsequently her estate.

76.    The Plaintiff knowingly expended Louise's monies for his own interests and to Louise and her ditributees' detriment.

77.    The Defendants would not have agreed to consent to the Power of Attorney and John Capponi's subsequent appointment as Louise's Guardian had they known he was going to spend monies on items unrelated to the development and/or furtherance of Louise's interests.

16

78. The Defendants are therefore entitled to the remuneration of the full amount of the investment of $216,000, plus interest accrued.

79. That by reason of the foregoing, Defendants suffered damages in the amount of $216,000 together with interest, costs, disbursements, and any other such relief as the Court deems just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Conversion)

80. Defendants repeat, reallege, and make a part hereof each and every allegation contained in paragraphs 1 through 79 of this Counterclaim with the same force and effect as if more fully set forth at length herein.

81. Pursuant to the terms of the Power of Attorney and/or the Guardianship Order, the Plaintiff, John Capponi, had the duty and obligation to use the Louise's money to pay for expenses reasonably related to the development or furtherance of her interests; and

82. Despite repeated demands by the Defendants, that Louise's money be accounted for and/or returned, they were not and the Plaintiff, John Capponi, continued to exercise unauthorized dominion and control over said funds.

83. The Plaintiff, John Capponi, intentionally and wrongfully exercised unauthorized dominion and control over Louise's money to the exclusion of Louise and/or her distributes, including Dennis Capponi.

84. That by reason of the foregoing, Plaintiffs suffered damages in the amount of $216,000, together with interest, costs, disbursements and any other such relief as the Court deems just and proper.

17

WHEREFORE, the Defendants, respectfully request Judgment of this Honorable Court:

(1) on the First Cause of Action that the Plaintiff, John Capponi be Ordered to provide a full and fair accounting of the monies which were wrongfully misappropriated from Louise Capponi's Estate; and

(2) on the Second Cause of Action that a Constructive Trust be imposed upon the remainder, of monies within Louise Capponi's Estate; and

(3) on the Third Cause of Action in the sum of the Plaintiffs' $216,000 together with interest thereon at a rate of 9% (as provided under the New York State CPLR); and

(4) on the Fourth Cause of Action in the sum of the Plaintiffs' $216,000 together with interest thereon at a rate of 9% (as provided under the New York State CPLR); and

(5) on the Fifth Cause of Action in the sum of the Plaintiffs' $216,000 together with interest thereon at a rate of 9% (as provided under the New York State CPLR); and

(6) on the Sixth Cause of Action in the sum of the Plaintiffs' $216,000 together with interest thereon at a rate of 9% (as provided under the New York State CPLR).

That the Plaintiff be Ordered to pay all costs and disbursements made by the Defendants in furtherance of this action, together with reasonable attorney fees; and whatever additional relief this Court deems to be just and proper.

Dated: Larchmont, New York
    July 25, 2008

MCMILLAN, CONSTABILE, MAKER & PERONE, LLC

By: _____
    Stewart A. McMillan, Esq.

18

C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------------X

IN THE MATTER OF THE APPLICATION OF
DENNIS CAPPONI FOR THE APPOINTMENT
OF A GUARDIAN OF THE PERSON
AND/OR PROPERTY OF:

                                  **AFFIDAVIT OF**

          LOUISE CAPPONI,                **JOANN MURPHY**

A Person Alleged to Be Incapacitated.

------------------------------------------------------------------X

JoAnn Murphy, being duly sworn deposes and says:

1.      I am over eighteen (18) years of age and understand the obligations of an oath.

2.      I currently reside at 34 Lake Shore Drive, Eastchester, New York, 10709.

3.      My telephone number is (914) 337-9593.

4.      I am the sister of Louise Capponi, the Person Alleged to Be Incapacitated.

5.      My sister, Louise Capponi is currently seventy-six (76) years old, with a date of birth of December 10, 1928.

## AIP's MENTAL & PHYSICAL CONDITION

6.      Louise Capponi currently resides at Methodist Church Home for the Aged, located at 4499 Manhattan College Parkway, Riverdale, New York (telephone number (718) 548-5100) were she has been since approximately December of 2004. She has been in nursing homes continuously since approximately 2000.

7.      Although she has usually maintained her mental faculties in recent years, my sister has been in very ill health physically in recent years.

8.     Currently, she suffers from a myriad of illnesses, the most serious of which include, upon information and belief, rheumatoid arthritis, high blood pressure, anxiety and anemia and age related memory loss.

9.     She is in a very weakened state and is unable to walk adequately without assistance.

10.     When my sister is able to get out of bed she usually requires the assistance of a wheelchair and has required the assistance of a wheelchair since approximately September 2003.

11.     Physically, within the past approximately five years, Louise has suffered numerous serious illnesses which include pneumonia, staph infection and bacterial colitis. She has also had to have her hip, as well as both knees, replaced.

12.     Due to her weakened condition, she also has difficulty performing a number of daily living activities such as dressing herself, bathing herself, going to the bathroom and managing her own affairs.

13.     During the past five years, I have observed her to be under the influence of a number of strong prescription medications when I have visited her which have taken their toll on her physically and worn her down. Upon information and belief the medications which have been prescribed include medications used to treat the following illnesses and/or conditions: anxiety, arthritis and severe pain.

14.     Partially because of these strong medications, Louise is incapable of concentrating for any reasonable length of time and has serious difficulties remembering things.

15.     Because of her inability to adequately manage her own financial affairs, she is likely to suffer harm.

## IMMEDIATE FAMILY HISTORY

16.     My sister is currently unable to provide for her own personal needs and manage her own property and does not adequately understand the nature and consequences of her inability.

17.     My sister, Louise, has been a widow since her husband died in 1972.

18.     She has two sons, Dennis E. Capponi, currently 55 years old, and John B. Capponi, currently 49 years old.

19.     My nephew, Dennis, lives with his wife Laura and son, Dennis, in Putnam Valley, New York.

20.    I see both Dennis and his family frequently.  It is my belief that Dennis is a hard working, responsible, family oriented man.

21.    My nephew, John,  has been divorced from his wife and estranged from his children as well as the rest of the family, myself included, for a long period of time and, to my knowledge, lives alone in Virginia.

22.    Upon information and belief, my nephew, John, has handled all of my sister's finances for approximately the last five years.

23.    It is my belief that, during that time period, John has inappropriately transferred a large amount of my sister's property into his own name, in flagrant disregard for her best interests.

24.    In the past thirty years, Louise has received  large distribution payments arising out of her 20% interest in the Willow Lane Associates, a real estate holding company of which I am the General Partner.

25.    Upon information and belief, my nephew, John, has used some of those distribution payments for his own purposes, and not in Louise's best interests.

26.    Upon information and belief, my nephew, John, has recently opened joint bank accounts in both his own and his mother's name.

27.    Upon information and belief, he has also done that primarily to benefit himself,  and not in Louise's best interests.

28.    It is also my belief that John has sought to consolidate his hold over my sister's property by limiting her access to, and driving a wedge between, her relationships with other relatives, myself included.

29.    Having watched both of Louise's sons grow up, it is my sincere belief that her interests would be best served if her older son, Dennis E. Capponi, is placed in charge of her person and her estate, rather than her son, John.

30.    It is my sincere belief that Dennis's sole motive for being Guardian would be to see that his mother is properly provided for, not to personally profit in any way.

31.    Recently , as General Partner of the Willow Lane Associates, I gave a $216,000 dollar dividend check to my nephew Dennis (to hold on behalf of his mother) due to the recent sale of real property located at 3111 Willow Lane, Bronx, NY 10461 (based upon her 20% interest in the Willow Lane Associates).

32.    That money is currently in an interest bearing account at Country Bank awaiting action by the Court.

33.    It is my belief that my sister would be unable to handle such a large sum of money responsibly and in her own best interests, and that her son John might appropriate it were it turned over to him.

34.    Upon information and belief, this is the last large sum of money available for purposes of providing for the long-term care and needs of my sister.

35.    I have heard, through various sources, that my nephew John was granted a Power of Attorney within the last few years to handle my sister's financial affairs. I do not know if there is any veracity to this nor have I been provided with a copy of this document, if it exists.

36.    It is my belief that, if it does exist, my nephew John was able to coerce my sister into signing this document due to her frail, weak and infirm condition.

37.    Therefore, if a power of attorney appointing my nephew, John Capponi, was indeed signed I respectfully request that it be immediately revoked by this Court.

38.    Should this Court be disinclined for any reason to choose Dennis as Guardian, I would be willing to act as Louise's Guardian myself. I feel I am the next best choice after Dennis because I am Vice Chair of a major bank and, as such, am well versed in financial matters, I have already assisted in the handling of some of Louise's financial affairs and personal needs, I live and work in close proximity to Louise's nursing home in the Bronx (as opposed to some other possible Guardians who live great distances away) and, most importantly, I simply want to see that my sister is taken care of and provided for.

39.    Accordingly, based upon all of the foregoing, I am requesting the appointment of a Guardian for the person and property of the AIP as soon as practically possible to protect her physical and financial well-being. Whoever is appointed Guardian should be endowed with the powers to marshal her assets and property and to deposit the proceeds in a Guardianship bank account to be used to pay for her continued care in the Methodist Church Home for the Aged, and whatever additional medical care and personal needs are required.

JoAnn M. Murphy

Sworn to before me this
_9_ day of _August_ , 2005

Notary Public

RICHARD LAUDENBACH JR.
Notary Public, State of New York
No. 4774028
Qualified in Westchester County
My Commission Expires Sept. 30, 20 06

D

**Virginia: In the Clerk's Office of the Circuit Court of the County of Clarke:**

I, April F. Wilkerson, Deputy Clerk, of the Circuit Court of the County of Clarke,

do hereby certify that on the _____ **16th day of May 2007**

_____**John B. Capponi**_____ duly qualified in my said Court as

**Administrator of the Estate of Louise Theresa Capponi, deceased**

and gave bond as such according to law, which bond is still in full force

and effect.

Given under my hand, this _19th day of March, 2008_

_April Wilkerson_                Deputy  Clerk

E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------------X
IN THE MATTER OF THE APPLICATION OF
DENNIS CAPPONI FOR THE APPOINTMENT
OF A GUARDIAN OF THE PERSON
AND/OR PROPERTY OF:

            LOUISE CAPPONI,

A Person Alleged to Be Incapacitated.

------------------------------------------------------------------X

**AFFIDAVIT OF
ANTONETTE POLCINI**

Antonette Polcini, being duly sworn deposes and says:

    1.    I am over eighteen (18) years of age and understand the obligations of an oath.

    2.    I currently reside at 463 Pelham Road, Building 5, Apt 2E, New Rochelle, New York, 10905.

    3.    My telephone number is (914) 576 -2470.

    4.    I am the sister of Louise Capponi, the Person Alleged to Be Incapacitated.

    5.    My sister, Louise Capponi is currently seventy-six (76) years old, with a date of birth of December 10, 1928.

### AIP's MENTAL & PHYSICAL CONDITION

    6.    Louise Capponi currently resides at Methodist Church Home for the Aged, located at 4499 Manhattan College Parkway, Riverdale, New York (telephone number (718) 548-5100) were she has been since approximately December of 2004. She has been in nursing homes continuously since approximately 2000.

    7.    Although she has usually maintained her mental faculties in recent years, my sister

has been in very ill health physically in recent years.

8.     Currently, she suffers from a myriad of illnesses, the most serious of which include, upon information and belief, rheumatoid arthritis, high blood pressure, anxiety and anemia and age related memory loss.

9.     She is in a very weakened state and is unable to walk adequately without assistance.

10.     When my sister is able to get out of bed she usually requires the assistance of a wheelchair and has required the assistance of a wheelchair since approximately September 2003.

11.     Physically, within the past approximately five years, Louise has suffered numerous serious illnesses which include pneumonia, staph infection and bacterial colitis. She has also had to have her hip, as well as both knees, replaced.

12.     Due to her weakened condition, she also has difficulty performing a number of daily living activities such as dressing herself, bathing herself, going to the bathroom and managing her own affairs.

13.     During the past five years, I have observed her to be under the influence of a number of strong prescription medications when I have visited her which have taken their toll on her physically and worn her down. Upon information and belief the medications which have been prescribed include medications used to treat the following illnesses and/or conditions: anxiety, arthritis and severe pain.

14.     Partially because of these strong medications, Louise is incapable of concentrating for any reasonable length of time and has serious difficulties remembering things.

15.     Because of her inability to adequately manage her own financial affairs, she is likely to suffer harm.

## IMMEDIATE FAMILY HISTORY

16.     My sister is currently unable to provide for her own personal needs and manage her own property and does not adequately understand the nature and consequences of her inability.

17.     My sister, Louise, has been a widow since her husband died in 1972.

18.     She has two sons, Dennis E. Capponi, currently 55 years old, and John B. Capponi, currently 49 years old.

19.     My nephew, Dennis, lives with his wife Laura and son, Dennis, in Putnam Valley,

New York.

20.    I see both Dennis and his family frequently.  It is my belief that Dennis is a hard working, responsible, family oriented man.

21.    My nephew, John,  has been divorced from his wife and estranged from his children as well as the rest of the family, myself included, for a long period of time and, to my knowledge, lives alone in Virginia.

22.    Upon information and belief, my nephew, John, has handled all of my sister's finances for approximately the last five years.

23.    It is my belief that, during that time period, John has inappropriately transferred a large amount of my sister's property into his own name, in flagrant disregard for her best interests.

24.    Upon information and belief, in the past thirty years Louise has received large distribution payments arising out of her 20% interest in the Willow Lane Associates, a real estate holding company.

25.    Upon information and belief, my nephew, John, has used some of those distribution payments for his own purposes, and not in Louise's best interests.

26.    Upon information and belief, my nephew, John, has recently opened joint bank accounts in both his own and his mother's name.

27.    Upon information and belief, he has also done that primarily to benefit himself,  and not in Louise's best interests.

28.    It is also my belief that John has sought to consolidate his hold over my sister's property by limiting her access to, and driving a wedge between, her relationships with other relatives, myself included.

29.    Having watched both of Louise's sons grow up, it is my sincere belief that her interests would be best served if her older son, Dennis E. Capponi, is placed in charge of her person and her estate, rather than her son, John.

30.    It is my sincere belief that Dennis's sole motive for being Guardian would be to see that his mother is properly provided for, not to personally profit in any way.

31.    Upon information and belief, as General Partner of the Willow Lane Associates, my sister, JoAnn Murphy, recently gave a $216,000 dollar dividend check to my nephew Dennis (to hold on behalf of his mother) due to the recent sale of real property located at 3111 Willow Lane, Bronx,

NY 10461 (based upon her 20% interest in the Willow Lane Associates).

32.    Upon information and belief, that money is currently in an interest bearing account at Country Bank awaiting action by the Court.

33.    It is my belief that my sister would be unable to handle such a large sum of money responsibly and in her own best interests, and that her son John might appropriate it were it turned over to him.

34.    Upon information and belief, this is the last large sum of money available for purposes of providing for the long-term care and needs of my sister.

35.    I have heard, through various sources, that my nephew John was granted a Power of Attorney within the last few years to handle my sister's financial affairs. I do not know if there is any veracity to this nor have I been provided with a copy of this document, if it exists.

36.    It is my belief that, if it does exist, my nephew John was able to coerce my sister into signing this document due to her frail, weak and infirm condition.

37.    Therefore, if a power of attorney appointing my nephew, John Capponi, was indeed signed I respectfully request that it be immediately revoked by this Court.

38.    Should this Court be disinclined for any reason to choose Dennis as Guardian, I would propose that my sister, JoAnn, be appointed to act as Louise's Guardian. I feel that JoAnn is the next best choice after Dennis because she is Vice Chair of a major bank and, as such, is well versed in financial matters. Additionally, she has already assisted in the handling of some of Louise's financial affairs and personal needs, she lives and works in close proximity to Louise's nursing home in the Bronx (as opposed to some other possible Guardians who live great distances away) and, most importantly, she simply want to see that Louise is taken care of and provided for, as do I.

39.    Accordingly, based upon all of the foregoing, I am requesting the appointment of a Guardian for the person and property of the AIP as soon as practically possible to protect her physical and financial well-being. Whoever is appointed Guardian should be endowed with the powers to marshal her assets and property and to deposit the proceeds in a Guardianship bank account to be used to pay for her continued care in the Methodist Church Home for the Aged, and whatever additional medical care and personal needs are required.

Antonette Polcini

Sworn to before me this
___9___ day of _August_ , 2005

Notary Public

RICHARD LAUDENBACH JR.
Notary Public, State of New York
No. 4774028
Qualified in Westchester County
My Commission Expires Sept. 30, 20 _06_

F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X
IN THE MATTER OF THE APPLICATION OF
DENNIS CAPPONI FOR THE APPOINTMENT          **PETITION**
OF A GUARDIAN FOR THE PERSON
AND/OR PROPERTY OF:

                                            Index No.: _____

          LOUISE CAPPONI,


A Person Alleged to Be Incapacitated.


-----------------------------------------------------------------X


TO THE SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF BRONX:


The Petitioner, DENNIS CAPPONI, respectfully alleges the following:


1.      I am over eighteen (18) years of age (Date of Birth: August 6, 1950) and understand
the obligations of an oath.

2.      I currently reside at 10 Woodlawn Road, Putnam Valley, New York 10579 along with
my wife, Laura E. Capponi, and my son, Dennis J.  Capponi, the AIP's daughter-in-law and
grandson, respectively.

3.      My telephone contact numbers are: Home: (845) 528-1241, Work: (914) 941-3738
and  Cell: (914) 325-2976 .

4.      I am the son of Louise Capponi, the Person Alleged to be Incapacitated ("AIP").

5.      My mother, Louise Capponi,  is seventy-six (76) years old, with a date of birth of
December 10, 1928.

6.      She has been a widow since my father's passing on February  9, 1972.

7.      Louise Capponi currently resides at the Methodist Church Home for the Aged, located

at 4499 Manhattan College Parkway, Riverdale, New York (telephone number (718) 548-5100) where she has resided since approximately December of 2004.

       8.     Prior to that, upon information and belief, she resided at a number of other nursing homes and extended care facilities including Riverdale Nursing Home; Beth Abraham Home and Hospital for the Aged; The Jewish Home in New York and at the Throggs Neck Extended Care Facility.

       9.     Louise Capponi is currently unable to provide for her own personal needs and manage her own property and does not adequately understand and appreciate the nature and consequences of her inability.

      10.    Because Louise Capponi is unable to provide for her own personal needs, it is therefore respectfully requested that a Guardian be appointed by the Court to safeguard Louise's person and property .

      11.    The original affidavits of Louise Capponi's sisters, JoAnn Murphy and Antonette Polcini, are attached hereto in support of this Petition as Exhibits A and B, respectively.

## NEED FOR PROPERTY MANAGEMENT POWERS

      12.    Upon information and belief my mother, Louise Capponi, was first placed into a nursing care facility in approximately the summer of 2000, and her condition has progressively worsened since that time.

      13.    Currently, she suffers from a myriad of illnesses, the most serious of which include, upon information and belief, rheumatoid arthritis, high blood pressure, anxiety, anemia and age related memory loss.

      14.    She is in a very weakened state and is unable to walk adequately without assistance.

      15.    When my mother is able to get out of bed she usually requires the assistance of a wheelchair and has required the assistance of a wheelchair since approximately September 2003.

      16.    Physically, within the past approximately five years, my mother has suffered numerous serious illnesses which include pneumonia, staph infection and bacterial colitis. She has

2

also had to have her hip, as well as both knees, replaced.

17.    Due to her weakened condition, she also has difficulty performing a number of daily living activities such as dressing herself, bathing herself, going to the bathroom and managing her own affairs.

18.    During the past five years, she has often had to leave the nursing homes where she has resided to receive extended medical treatment (sometimes including surgical intervention) at a number of different area hospitals including Beth Israel Hospital in New York City, Mt. Sinai Hospital in New York City and at Westchester Square Hospital in the County of Westchester.

19.    During the past five years, I have observed her to be under the influence of a number of strong prescription medications when I have visited her which have sometimes rendered her incoherent and/or non-responsive. Upon information and belief the medications which have been prescribed for my mother include medications used to threat the following illnesses and/or conditions: anxiety, arthritis and severe pain.

20.    My mother is incapable of concentrating for any reasonable length of time and has serious difficulties remembering things.

21.    Prior to her admission into the aforementioned nursing homes her financial affairs were handled by John Capponi for approximately five (5) years.

22.    Because of her inability to provide for her own financial affairs, she is likely to suffer harm.

23.    I have heard, through various sources, that my brother, John, was given a Power of Attorney within the last few years to handle my mother's financial affairs. I do not know if there is any veracity to this nor have I been provided with a copy of this document, if it exists.

24.    It is my belief that, if this document does exist, my brother John was able to coerce my mother into signing this document due, in part, to her frail, weak and infirm condition.

25.    As set forth below (under Financial Resources) I have recently been provided with a check in the amount of approximately $216,000, based upon my mother's 20% Partnership Interest in the Willow Lane Associates, a real estate holding company which previously owned the real property located at 3111 Willow Lane, Bronx, New York.

26.    I have not deposited this check into an escrow account because it was made out in

3

my mother's name. I have also refrained from giving this check to my mother because of my concern that she could not handle this sum of money responsibly, and in her own best interests.

27.     My mother has received approximately $60,000 dollars since 1999 as yearly distribution payments based upon her 20% Partnership Interest in the Willow Lane Associates.

28.     Upon information and belief, my mother has received as much as $370,000 in the last thirty-four (34) years as yearly distribution payments based upon her 20% Partnership Interest in the Willow Lane Associates.

29.     The monies my mother previously received as distribution payments related to her 20% interest in Willow Lane Associates are currently unaccounted for and presumed to have been spent or other wise dissipated by my brother John without any consideration for my mother's long term personal and financial needs.

30.     Accordingly, based upon all of the foregoing, I am requesting the appointment of a Guardian to safeguard the person and property of the AIP as soon as practically possible and to protect her physical and financial well-being. Whoever is appointed Guardian should be endowed with the powers to marshal all of her assets and property and to deposit the proceeds in a Guardianship Bank Account to be used to pay for her continued care in the Methodist Church Home for the Aged, and any future medical care and personal needs, as they become required.

## POWERS BEING SOUGHT

31.     As set forth more fully above, due to my mother Louise's impairments, she lacks the ability to adequately manage her own finances and requires assistance with respect to nearly all aspects of her daily living activities. I therefore respectfully request that the Court grant me the power to manage my mother's finances and to assist her with all aspects of her daily living activities not already provided for by the Methodist Church Home for the Aged.

32.     I also request that the Court grant me the power to examine all of Louise's current assets and, if necessary, to retain the services of a forensic accountant to examine same.

4

DURATION OF POWERS BEING SOUGHT

33.    Based upon all of the foregoing, I respectfully request that the Court grant the requested powers for an indefinite period of time.

FINANCIAL RESOURCES

34.    Upon information and belief, and to the best of my knowledge, Louise's assets are estimated to be as follows:

| ASSET | TOTAL |
|---|---|
| A. Stocks | None Known |
| B. Insurance | None Known |
| C. Personal Property | Assorted Personal Jewelry. Value Unknown |
| D. Real Property | None Known |
| E. Bank Accounts | The Chase Manhattan Bank, 3217 Westchester Avenue Bronx, NY 10461 (Checking Account - Amount Available Presently Unknown). |
| F. Liquid Assets | $216,000 check arising out of the sale of real property located at 3111 Willow Lane, Bronx, NY 10461. |
| Louise Capponi's Estimated Total Assets: | $250,000 +/- |

5

35.    Upon information and belief, and to the best of my knowledge, Louise Capponi's monthly income is estimated to be as follows:

| INCOME | TOTAL |
| --- | --- |
| A.  Social Security | Unknown |
| B.  Pension Benefits | Unknown |
| C. Interest Income | None Known |
| D. Dividends | None Known |

36.    Upon information and belief, my mother has received small, yearly stipends from Medicaid of  approximately $8500 per year (in the past ten years), which amount is distributed directly to the nursing home in which my mother is residing at the time by Medicaid.

## DEBTS OR OTHER OBLIGATIONS

37.    Upon information and belief, and to the best of my knowledge, Louise has no outstanding debts or other financial obligations.

## AVAILABLE RESOURCES

38.    Due to her frail condition Louise Capponi is unable to  understand and appreciate the import and consequences of signing legal documents containing serious and long lasting ramifications. Therefore, if a power of attorney appointing my brother, John Capponi, was indeed signed I respectfully request that it be immediately revoked by this Court.

39.    Upon information and belief there are no other Powers of Attorney, Trusts, Health Care Proxies, Do Not Resuscitate Orders or other documents currently in existence which would

6

affect Louise Capponi's personal and/or financial needs.

## INTERESTED PARTIES

40.    The names, addresses, telephone numbers and relationships of the relevant Interested Parties are listed below, to the best of my knowledge and upon information and belief:

A.    Dennis E. Capponi, son, 55 years old, 10 Woodlawn Road, Putnam Valley, New York, 10579.  Telephone Contact Numbers: Home:  (845) 528-1241, Work: (914) 941-3738 and Cell: (914) 325-2976.

B.    John B. Capponi, son, 49 years old, 9061 Giltinan Court, Springfield, Virginia, 22153. Telephone Contact Numbers: Unknown.

C.    Jason Capponi, grandson, 29 years old, 3031 Penn Estates, East Stroudsburg, Pennsylvania, 18301. Telephone Contact Numbers:  Cell: 845 591-9869.

D.    John Capponi, grandson, 24 years old,  Pennsylvania. Address Unknown. Telephone Contact Numbers: Unknown.

E.    Dennis J. Capponi, grandson, 22 years old, 10 Woodlawn Road, Putnam Valley, New York, 10579. Telephone Contact Number: Home:  (845) 528-1241.

F.    Laura E. Capponi, daughter- in- law, 52 years old,  10 Woodlawn Road, Putnam Valley, New York, 10579. Telephone Contact Number:  Home:  (845) 528-1241.

G.    JoAnn Murphy, sister, 63 years old, 34 Lake Shore Drive, Eastchester, New York, 10709.  Telephone Contact Number: Home: (914) 337-9593.

H.    Joseph Murphy, Sr., brother-in-law, 70 years old, 34 Lake Shore Drive, Eastchester, New York, 10709.  Telephone Contact Number: Work: (212) 818-9090.

I.    Antonette Polcini, sister, 74 years old, 463 Pelham Road, Building 5, Apt 2E, New Rochelle, New York, 10905.  Telephone Contact Number: Home: (914) 576 -2470.

J.    Frank Mazzella, brother, 78 years old, Address Unknown.  Telephone Contact Numbers: Unknown.

## PROPOSED GUARDIAN AND STAND-BY GUARDIAN

41.    The names, addresses and relationships of the Proposed Guardian and Stand-by Guardian are listed below:

| Name | Address | Relationship |
|------|---------|--------------|
| Dennis E. Capponi | 10 Woodlawn Rd, Putnam Valley, NY | AIP's son |
| JoAnn Murphy | 34 Lake Shore Drive, Eastchester, NY | AIP's sister |

42.    The reason why the Proposed Guardian is suitable to exercise the powers necessary to assist the AIP is that the Proposed Guardian is Louise's son, he has already assisted in the handling of some of her financial affairs and personal needs, he lives and works in close proximity to Louise's nursing home in the Bronx (as opposed to some other possible Guardians who live great distances away) he has the ability to perform functions in which he assists his mother due to his flexible job schedule and, most importantly, he simply wants to see that his mother is taken care of and provided for.

43.    Louise Capponi's closest living relatives (besides her sons, Dennis and John), her sisters, Antonette Polcini and JoAnn Murphy, are in favor of Dennis's appointment as Personal Needs and Property Management Guardian on behalf of his mother Louise, as stated in the accompanying affidavits.

44.    Should this Court, for any reason, be disinclined to appoint Dennis Capponi as Guardian, the Petitioner would respectfully request that the AIP's sister, JoAnn Murphy, be appointed.

45.    Mrs. Murphy is suitable to exercise the powers necessary to assist Louise in that JoAnn is Louise's sister, she is Vice Chairman of a major bank and, as such, is well versed in financial matters, she has already assisted in the handling of some of Louise's financial affairs and personal needs, she lives and works in close proximity to Louise's nursing home in the Bronx (as opposed to some other possible Guardians who live great distances away) and, most importantly,

8

she simply wants to see that her sister is taken care of and provided for.

46.    No other application has previously been made for the relief sought herein to this Court nor to any other Court of competent jurisdiction.

WHEREFORE, the Petitioner respectfully requests that:

1. The annexed Order to Show Cause be signed by this Honorable Court; and

2. That the Court's Decision also include the appointment of a Court Evaluator to evaluate Louise Capponi and her personal and financial needs and to make appropriate recommendations to the Court related thereto; and

3. That in the Court's discretion, an attorney be appointed by the Court to safeguard Louise's interests during these proceedings; and

4. That a Personal Needs and Property Management Guardian be expressly authorized to exercise the following powers on behalf of Louise:

   a. To marshal the Alleged Incapacitated Person's assets and pay all expenses necessary for her well being; and

   b. To authorize access to or release of any confidential records on behalf of Louise necessary for her care and well being; and

   c. To apply for any government and/or private benefits; and

   d. To consent to or refuse routine or major medical or dental treatment; and

   e. To authorize the necessary financial expenditures for the continued care and treatment of the Alleged Incapacitated Person in a nursing care facility; and

   f. To grant the Petitioner such other and further or different relief as this Court may deem just and proper.

Dated: New York, New York
       August 20, 2005

_Dennis E. Capponi_
Dennis E. Capponi

10

## **VERIFICATION**

STATE OF NEW YORK    )
                                          ) ss.:
COUNTY OF PUTNAM    )


Dennis E. Capponi, being duly sworn, deposes and says:

I am the Petitioner in the within action.  I have read the foregoing Petition and know the contents thereof and the same is true to the best of my knowledge, except as to those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.


Dennis E. Capponi


Sworn to before me this
20 day of April , 2005


NOTARY PUBLIC

DANIEL P. BECKER
NOTARY PUBLIC, NEW YORK STATE
NO. 01BE5077108
QUALIFIED IN PUTNAM COUNTY
COMMISSION EXPIRES MAY 5, 2007

11

**ATTORNEY**
**VERIFICATION**

**STEWART A. McMILLAN,** an attorney duly admitted to practice law before the Courts

of the State of New York, hereby affirms the following to be true under the penalties of perjury:

That, **STEWART A. McMILLAN,** is an attorney, of counsel to the Law Offices of

McMillan Constabile, LLP, 2180 Boston Post Road, Larchmont, New York, attorneys of record for

the Petitioner, Dennis Capponi, in the within proceeding; that he has read the foregoing petition and

knows the contents thereof; the same is true to the affirmant's own knowledge , except as to those

matters said to be upon information and belief, and as to those matters, affirmant believes same to

be true.

Affirmed the _30TH_ day of

_August_____, 2005

_SAM_
_____
Stewart A. McMillan

G



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------X



IN THE MATTER OF THE APPLICATION OF
DENNIS CAPPONI FOR THE APPOINTMENT
OF A GUARDIAN FOR THE PERSON
AND/OR PROPERTY OF:

**ORDER AND JUDGMENT
APPOINTING GUARDIAN**

LOUISE CAPPONI,

Index No.: 91972/05    **AN**<sub>II</sub>

A Person Alleged to Be Incapacitated.

(Hon. Alexander W. Hunter, Jr.)

-------------------------------------------------------------X

TO THE SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF BRONX:



An order having been duly made herein at IAS Part 23 of this court on the 22nd Day of

~~September~~
~~November~~, 2005 directing that

A.    Dennis E. Capponi, son, 55 years old, 10 Woodlawn Road, Putnam Valley, New

York, 10579. Telephone Contact Numbers: Home: (845) 528-1241, Work: (914) 941-3738 and

Cell: (914) 325-2976; and

B.    John B. Capponi, son, 49 years old, 9061 Giltinan Court, Springfield, Virginia,

22153. Telephone Contact Numbers: Unknown; and

C.    Jason Capponi, grandson, 29 years old, 3031 Penn Estates, East Stroudsburg,

Pennsylvania, 18301. Telephone Contact Numbers: Cell: 845 591-9869; and

D.    John Capponi, grandson, 24 years old, Pennsylvania. Address Unknown. Telephone

Contact Numbers: Unknown; and

E.    Dennis J. Capponi, grandson, 22 years old, 10 Woodlawn Road, Putnam Valley, New

York, 10579. Telephone Contact Number: Home: (845) 528-1241; and

F.    Laura E. Capponi, daughter- in- law, 52 years old, 10 Woodlawn Road, Putnam

03:35:31 p.m.    07-15-2008    6/16

00    ab



Valley, New York, 10579. Telephone Contact Number: Home: (845) 528-1241; and

G.    JoAnn Murphy, sister, 63 years old, 34 Lake Shore Drive, Eastchester, New York, 10709. Telephone Contact Number: Home: (914) 337-9593; and

H.    Joseph Murphy, Sr., brother-in-law, 70 years old, 34 Lake Shore Drive, Eastchester, New York, 10709. Telephone Contact Number: Work: (212) 818-9090; and

I.    Antonette Polcini, sister, 74 years old, 463 Pelham Road, Building 5, Apt 2E, New Rochelle, New York, 10905. Telephone Contact Number: Home: (914) 576 -2470; and

J.    Frank Mazzella, brother, 78 years old, Address Unknown. Telephone Contact Numbers: Unknown;

Show cause why a guardian for personal needs and/or property management should not be appointed for Louise Capponi, and granting other relief, and Francis T. Alberts, Esq. having been duly appointed court evaluator herein and having duly appeared as same and The Mental Hygiene Legal Service having been appointed as counsel for the alleged incapacitated person and having appeared on behalf of the incapacitated person, and Stewart A. McMillan, Esq., having appeared for the Petitioner, and this matter having regularly come on for a hearing on the 7th day of November 2005 and the parties having adduced their proof on the record, and the alleged incapacitated person (And all other parties hereto) having consented to the appointment of her son, John Capponi, as her guardian, and it appearing therefrom to the satisfaction of the Court, by clear and convincing evidence, that the alleged incapacitated person is likely to suffer harm because the alleged incapacitated person is unable to provide for her own personal needs and property management and cannot understand and appreciate the nature and consequences of such inability, and the Court having heard from all parties on the record on the 7th day of November 2005, and issued a written order on the 10th day of November 2005, and upon all the pleadings and proceedings heretofore had herein, and due deliberation having been had, and upon the motion of McMillan Constable, LLP attorneys for the Petitioner, it is

ORDERED AND ADJUDGED, that Louise Capponi be and hereby is determined to be a person requiring the appointment of a guardian for personal needs and property management as the Court has found that said incapacitated person is likely to suffer harm because of an inability to

2



provide for her own personal needs and property management and she is unable adequately to understand and appreciate the nature and consequences of such inability; and it is further

ORDERED AND ADJUDGED, that her son, John Capponi, of 9061 Giltinan Court, Springfield, VA 22153, is hereby appointed guardian for personal needs and property management of Louise Capponi, upon filing with this Court, pursuant to Mental Hygiene Law Section 81.25, a bond in the sum of $219,111.32 (as required by the Court) with sufficient sureties, conditioned that the said guardian will in all things faithfully discharge the trust imposed herein, obey all the directions of the Court in respect to the trust, make and render a true and just account of all monies and other properties received pursuant to the authority granted herein and the application thereof, and of all acts performed in the administration of the trust imposed herein whenever required to do so by the Court, and will file the oath and designation required by section 81.26 of the Mental Hygiene Law; and it is further

ORDERED AND ADJUDGED, that pursuant to section 81.27 of the Mental Hygiene Law, upon the filing of such oath, bond and designation, as required by statute, a commission in due form of law shall be issued by the Clerk of the Court which shall state 1) the title of the proceeding and the name, address and telephone number of the incapacitated person; and 2) the name, address, and telephone number of the guardian and the specific powers of such guardian 3) the date when the appointment of the guardian was ordered by the Court; and 4) the date on which the appointment terminates if one has been ordered by the Court, the commission shall be filed within ninety (90) days of entry of this Order/Judgment, and it is further

ORDERED AND ADJUDGED, that the attorney for the Petitioner shall serve upon the Court appointed guardian, a copy of this Order and Judgement, assist in the preparation of the commission, oath and designation, and obtaining, if necessary, the bond, assist the guardian in obtaining the certified and executed commission from the Clerk of the Court; and it is further

ORDERED AND ADJUDGED, that the authority of the guardian for property management shall extend to all the property of the incapacitated person both real and personal, and it is further

ORDERED AND ADJUDGED, that the duration of this guardianship shall be indefinite; and it is further

ORDERED AND ADJUDGED, that all persons are hereby directed and commanded to deliver to the guardian for property management, upon demand and presentation of a certified copy of the commission, all property of the incapacitated person, of every kind and nature which may be in their possession or under their control; and it is further,

ORDERED AND ADJUDGED, that the guardian for property management may, without prior authorization of the Court, make reasonable expenditures from the alleged incapacitated person's assets for the purposes of providing the incapacitated person with necessaries or preserving the property of the incapacitated person; and it is further

ORDERED AND ADJUDGED, that the guardian for property management may, without prior authorization of the Court, marshall the alleged incapacitated person's assets and invest surplus funds in investments eligible by law for the investment of trust funds and may dispose of investments so made and reinvest the proceeds as so authorized. Nothing herein contained shall be deemed to limit the power of the Court to approve any investment made without its authorization, or to control the disposition of the property of the incapacitated person of investment or reinvestment of the incapacitated person's funds, or to make a new order respecting investments at any time; and it is further

ORDERED AND ADJUDGED, that the guardian for property management may not alien, mortgage, lease or otherwise dispose of real property, if any, of the alleged incapacitated person, without special direction of the Court obtained upon proceedings taken for that purpose as prescribed in Article 17 of the Real Property Actions and Proceedings Law, provided, however that without instituting such proceedings, the guardian for property management may, with authorization of the Court, lease a primary residence for the incapacitated person for a term not to exceed three (3) years; and it is further

ORDERED AND ADJUDGED, that the guardian for property management may, without prior authorization of the Court, maintain in his or her own name and official title any civil judicial proceeding which the incapacitated person might have maintained were he or she competent; and it is further

ORDERED AND ADJUDGED, that the guardian shall not make any secondary appointments without the prior approval of the Court, and that the guardian shall comply with Part 36 of the Rules

4



of the Chief Judge, and it is further

ORDERED AND ADJUDGED, that the guardian shall not pay any fees without prior approval of the Court, and it is further

ORDERED AND ADJUDGED, that pursuant to section 81.36(e) of the Mental Hygiene Law, upon the death of the incapacitated person, the guardian shall have the authority to pay for the reasonable funeral expenses of the incapacitated person; and it is further

ORDERED AND ADJUDGED, that upon the death of the incapacitated person, the guardian shall have the power to pay bills of the incapacitated person which were incurred prior to the death of the incapacitated person provided the guardian would otherwise have had the right to pay such bills; and it is further

ORDERED AND ADJUDGED, as it is anticipated that during the pendency of this proceeding, care and treatment for the alleged incapacitated person may be paid for by the New York City Medical Assistance Program, it is ordered that the guardian appointed herein repay the Medicaid Program for funds so expended to the extent that the income and resources of the alleged incapacitated person exceed the Medicaid eligibility level at the time such assistance was granted, and it it if further

ORDERED AND ADJUDGED, that the guardian for property management shall have the authority to pay for the reasonable care and maintenance of the incapacitated person; and it is further,

ORDERED AND ADJUDGED, that the guardian appointed herein shall pay any outstanding local, New York State and/or Federal Income Taxes on behalf of the incapacitated person, and as Ordered by the Court, including but not limited to payment for taxes currently due and owing (or which will be due and owing) by the alleged incapacitated person arising out of her share of the sale of the property located at 3111 Willow Lane, Bronx, New York; and it is further,

ORDERED AND ADJUDGED, that the guardian for property management shall have such authority as may be granted by any statue of the United States of America or the State of New York to a guardian for property management, conservator or committee of the property and the guardian for personal needs shall have such authority as may be granted by any statute of the United States of America or the State of New York to a guardian for personal needs or a committee of the person unless any such statute specifically requires permission of the Court before the exercise of such



power granted therein; and it is further

ORDERED AND ADJUDGED, that pursuant to section 81.20 of the Medical Hygiene Law, the guardian shall:

(a) exercise only those powers that the guardian is authorized to exercise by order of the Court; and

(b) exercise the utmost care and diligence when acting on behalf of the incapacitated person; and

(c) exhibit the utmost degree of trust, loyalty and fidelity in relation to the incapacitated person; and

(d) visit the incapacitated person not less than four times per year; and

(e) afford the incapacitated person the greatest amount of independence and self determination with respect to property management and personal needs in light of that person's functional level, understanding and appreciation of his or her functional limitations, and personal wishes, preferences and desires with regard to managing the activities of daily living; and it is further

ORDERED AND ADJUDGED, that pursuant to section 81.20 of the Mental Hygiene Law the guardian shall:

(a) preserve, protect and account for the incapacitated person's property and financial resources faithfully;

(b) determine whether the incapacitated person has a will, determine the location of any will and the appropriate persons to be notified in the event of the death of the incapacitated person and, in the event of the death of the incapacitated person, notify those persons;

(c) at the termination of the appointment, deliver the property of the incapacitated person to the person legally entitled to it;

(d) file with the recording office of the county wherein the incapacitated is possessed of real property, if any, an acknowledged statement to be recorded and indexed under the name of the incapacitated person, identifying the real property possessed by the incapacitated person, and the tax number of the property, and stating the date of adjudication of incapacity of the person regarding property management and the name address and telephone number of the guardian and the guardian's surety;

6

(e) perform all other duties required by law; and it is further

ORDERED AND ADJUDGED, that to the extent of the net estate available therefor, the guardian shall provide for the maintenance, support, and personal well-being of the incapacitated person and then may, without further order of the Court, provide for the maintenance and support of all persons legally dependent upon the incapacitated person; and it is further

ORDERED AND ADJUDGED, that if the incapacitated person has a safe deposit box in any bank, then the guardian be and is hereby directed to take an inventory of the contents of such safe deposit box in the presence of a representative of the surety on the bond (unless the surety waives his presence in writing) and an officer of the bank, and that a list of the contents of such safe deposit shall be certified by all present, and a copy thereof shall be promptly filed by the guardian with the Court; and it is further

ORDERED AND ADJUDGED, that pursuant to Section 81.22 of the Mental Hygiene Law the guardian for personal needs shall have the authority to make the following decisions concerning the personal needs of the incapacitated persons;

(a) determine who shall provide personal care and assistance to the incapacitated person.

(b) make decisions regarding social environment and other social aspects of the life of the incapacitated person.

(c) determine whether the incapacitated person should travel.

(d) determine whether the incapacitated should possess a license to drive.

(e) authorize access to or release confidential records.

(f) apply for government and private benefits.

(g) consent to or refuse generally accepted routine or major medical or dental treatment, provided that the guardian for personal needs shall make treatment decisions consistent with the findings herein and section 81.15 of the Medical Hygiene Law and in accordance with the patient's wishes, including the patient's wishes, including the patient's religious observance, in accordance with the person's best interest, including a consideration of the dignity and uniqueness of every person, the possibility and the extent of preserving the person's life, the preservation, improvement or restoration of the person's health or functioning, the relief of the person's suffering,

7



the adverse side effects associated with the treatment, any less intrusive alternative treatments, and such other concerns and values as a reasonable person in the incapacitated person's circumstances would wish to consider;

(h) choose the place of abode of the incapacitated person provided that the choice of abode must be consistent with the findings herein pursuant to Mental Hygiene Law Section 81.15, the existence of and availability of family, friends and social services in the community, the care, comfort and maintenance, and where appropriate, rehabilitation of the incapacitated person, the needs of those with whom the incapacitated person resides; and provided further that based upon the findings made by this Court the guardian for personal needs (shall, ~~shall not~~) have the authority to place the incapacitated person in a nursing home or residential care facility (or remove the incapacitated person from a nursing home or residential care facility in which she already resides) as those terms are defined in Section 2801 of the Public Health Law, without prior written consent of the incapacitated person; and it is further



ORDERED AND ADJUDGED, that pursuant to Section 81.39 of the Mental Hygiene Law the guardian shall attend a training program approved by the Chief Administrator of the Courts and obtain proof that the training was completed and furnish proof of such with the Guardianship Clerk; and it is further

ORDERED AND ADJUDGED, that pursuant to Section 81.30 of the Mental Hygiene Law no later than ninety (90) days after the issuance of a commission to the guardian, the guardian shall file with the Guardianship Department of Bronx Supreme Court, 851 Grand Concourse, Bronx, New York, Room 217, an initial report (and shall mail a copy to the Court Examiner assigned herein) in a form required by that section and proof of completion of the guardian education requirement under Section 81.39 of the Mental Hygiene; and it is further

ORDERED AND ADJUDGED, the guardian shall file during the month of May of each year with the Guardianship Department of Bronx Supreme Court, Bronx County, the county in which the incapacitated person last resided before the appointment of a guardian, an annual report in the form required by Section 81.31 Mental Hygiene Law, and shall mail a copy of said report to the Court examiner assigned herein; and it is further



8



ORDERED AND ADJUDGED, that if the initial or annual report sets forth any reasons for a change in the powers authorized by the Court, that guardian shall make application within ten (10) days of the filing of such report for a change in powers on notice to the persons entitled to such notice; and it is further

ORDERED AND ADJUDGED, that upon the guardian's failure to file the initial report within ninety (90) days after the issuance of commission, the Court Examiner shall serve the guardian with a demand letter by certified mail, and upon the guardian's failure to comply, move the Court by order to show cause to remove the guardian; and it is further

ORDERED AND ADJUDGED, that the guardian shall notify the Court and the Court Examiner immediately upon any change of address of the guardian or the incapacitated person, and it is further

ORDERED AND ADJUDGED, that in the event of the death of the incapacitated person, the guardian shall notify the Guardianship Clerk, of the Bronx Supreme Court, the Court Examiner and the Bronx's Surrogate's Court in writing immediately, including a copy of the death certificate, and the guardian shall move for the judicial settlement of a final account within sixty (60) days thereafter or for an extension of such time upon good cause shown; and it is further

ORDERED AND ADJUDGED, that the compensation of the guardian shall be at the same rate provided for under ~~81.28 of the Mental Hygiene Law~~, Section 2307 of the Surrogates Court Procedure Act and as approved by the Court; and it is further

ORDERED AND ADJUDGED, that the Guardian shall take no annual commissions/compensation for any year until that year's annual account is filed, reviewed by the Court Examiner, and approved by the Court; and it is further

ORDERED AND ADJUDGED, that the guardian shall make the following disbursements from the funds of the incapacitated person:

(a) To _Alberts, Esq._ Francis T. the sum of $ 3,562.50 for services rendered as Court Evaluator.

(b) To _MHLS_ the sum of $ 0 for services rendered as attorney for the incapacitated person; and it is further

ORDERED AND ADJUDGED, that none of the above fees shall be paid until the guardian

9



has filed their commission and has qualified to serve as guardian, and it is further

ORDERED AND ADJUDGED, that pursuant to 81.16(c)(3) of the Mental Hygiene Law notice of all further proceedings with regard to this matter shall be given to:

1. Louise Capponi (AIP), Methodist Church Home for the Aged 4499 Manhattan College Parkway Bronx, NY 10471; and

2. Francis T. Alberts, Esq. (Court Evaluator), 934 Sheridan Avenue Bronx, NY 10451; and

3. Mental Hygiene Legal Service (Counsel for AIP) 60 Madison Avenue, 2nd floor, New York, NY 10010; and

4. Thomas A. Hecker, Administrator, Methodist Church Home for the Aged, 4499 Manhattan College Parkway Bronx, NY 10471; and

5. Stewart A. McMillan, Esq. (Counsel for Petitioner)  McMillan Constabile, LLC, 2180 Boston Post Road, Larchmont, New York 10538


*Interested Parties -*

6.      Dennis E. Capponi, AIP's son, 10 Woodlawn Road, Putnam Valley, New York, 10579.

7.      John B.  Capponi, AIP's son, 9061 Giltinan Court, Springfield, Virginia, 22153.

8.      Jason Capponi, AIP's grandson, 3031 Penn Estates, East Stroudsburg, Pennsylvania, 18301

9.      John Capponi, AIP's grandson, Pennsylvania (c/o father: John B. Capponi, 9061 Giltinan Court, Springfield, Virginia, 22153).

10.     Dennis J.  Capponi, AIP's grandson, 10 Woodlawn Road, Putnam Valley, NY 10579.

11.     Laura E. Capponi, AIP's daughter- in- law, 10 Woodlawn Road, Putnam Valley, New York, 10579

12.     JoAnn Murphy, AIP's sister, 34 Lake Shore Drive, Eastchester, New York, 10709.

13.     Joseph Murphy, Sr., AIP's brother-in-law, 34 Lake Shore Drive,  Eastchester, New York, 10709.

14.     Antonette Polcini, AIP's sister, 463 Pelham Road, Building 5, Apt 2E, New

10



Rochelle, New York, 10905.

    ORDERED AND ADJUDGED, that pursuant to Section 81.16(e) of the Mental Hygiene Law a copy of this order and judgment shall be personally served upon and explained to the incapacitated person by the guardian; and it is further

    ORDERED AND ADJUDGED, that *Lawrence Jay Ukryn, Esq,* of *382 Warren St. #2L Bklyn NY 11201-6528* *718 855-4192*, is hereby appointed Court Examiner by Order of the Presiding Justice of the Appellate Division, First Department, dated May 11, 1993, and is assigned to examine the initial and annual reports of the Guardian(s) named herein; and it is further

    ORDERED AND ADJUDGED, that the Petitioner herein, within thirty (30) days of the signing of this Order and Judgement, serve upon the Court Examiner a copy of this Order and Judgement together with Notice of Entry, and it is further

    ORDERED AND ADJUDGED, that the said guardian, before taking possession of any personal property valued in excess of the above mentioned bond, file an additional bond to be fixed and approved by a Justice of this Court pursuant to Article 81 of the Mental Hygiene Law, and it is further

    ORDERED AND ADJUDGED, that any appointee herein shall comply with Part 36 of the Rules of the Chief Judge by filing OCA form 872 with the Fiduciary Clerk in the Bronx Supreme Court. Any subsequent affidavit of affirmation of service submitted to this Court must contain a statement indicating such compliance and be accompanied by a properly completed 875.

    ORDERED AND ADJUDGED, that failure to comply with the applicable provisions of this Order, shall require an appearance for a compliance conference.

Dated: New York, New York
    *JUNE 5*, 2006

ENTER:

DATE BOND FILED _____

OATH & DESIGNATION FILED_____

COMMISSION FILED_____

J.S.C.

**Alexander W. Hunter, Jr.**

11    *Hector L. Diaz*
       *Clerk*   JUN 16 2006

*Index No.:* 91972/05                          **Year 2006**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

IN THE MATTER OF THE APPLICATION OF
DENNIS CAPPONI FOR THE APPOINTMENT
OF A GUARDIAN OF THE PERSON
AND/OR PROPERTY OF:



LOUISE CAPPONI,

A Person Alleged to Be Incapacitated.

**NOTICE OF SETTLEMENT
OF ORDER AND JUDGMENT
APPOINTING GUARDIAN**

### McMillan Constabile, LLP
2180 Boston Post Road
Larchmont, NY 10538
(914) 834-3500

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*DATED:* _____5/17/06_____

SIGNATURE
PRINT SIGNERS NAME    STEWART A. McMILLAN, ESQ.

*Service of a copy of the within* _____ *is hereby admitted.*

*Dated: 9/24/05*

Attorney(s) for

# FAX TRANSMISSION

## McMILLAN, CONSTABILE, MAKER & PERONE, LLP
2180 Boston Post Road
Larchmont, NY 10538
Phone: 914-834-3500
Fax: 914-834-0620

To:                                   Judge Laura Taylor Swain
                                      Attn: Mr. Friedman, Law Clerk

Telecopier Number:                    **(212) 805-0417**

From:                                 Stewart A. McMillan, Esq.

Re:                                   **United States District Court, Southern District of New York v.**
                                      **Capponi, Murphy, et al.**
                                      <u>**Docket No.: 08 Civ. 4449 (LTS) (DFE)**</u>

Date:                                 July 15, 2008

Pages (including cover page):

Comments:                             Edward Cohn (*via facsimile (212) 593-1318*)

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that nay dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return this original message to us at the above address via the U.S. Postal Service. Thank you.

Time Transmitted:

Transmitted by:      S. Williams

IF THERE ARE ANY PROBLEMS RECEIVING THIS TELECOPIER MESSAGE, PLEASE CALL
THE FOLLOWING NUMBER: (914) 834-3500

H

McMILLAN CONSTABILE, MAKER & PERONE, LLP

THOMAS R. CONSTABILE, JR
STEWART J. MCMILLAN
WILLIAM MAKER JR
GARY M. RIXOON
JOHN M. PERONE¹
WILLIAM J. FOSTER IV
GARY RYME¹

RITA J. MILLER

¹ RETIRED JUDGE OF THE SUPREME COURT
  OF THE STATE OF NEW YORK
² ALSO ADMITTED IN CONNECTICUT
³ ALSO ADMITTED IN NORTH CAROLINA
⁴ ALSO ADMITTED IN DISTRICT OF COLUMBIA

COUNSELLORS AT LAW
2160 BOSTON POST ROAD
LARCHMONT, NEW YORK 10538

TEL: (914) 834 - 3500
FAX: (914) 834 - 0620

CONNECTICUT OFFICE
200 SUMMER STREET
STAMFORD, CT 06901
TEL: (203) 326-4276

STEWART A. MCMILLAN²
SALVATORE M. DICOSTANZO²
PATRICIA J. MICEK
KEITH J. MCMILLAN
WILLIAM G. HALEY
RANDLE B. CARPENTER, JR.²
CHARLES L. SIDDONS²
KATHERINE A. GIALO
RICHARD C. RAYMOND²
OF COUNSEL

November 17, 2006

*Via Federal Express*
Mr. John Capponi
7339 Iron Bit Drive
Warrenton, VA 20186

> Re: *In the Matter of the Application of Dennis Capponi,*
> *as Guardian for Louise Capponi*
> *Supreme Court, Bronx County Index No.: 91972.05*

Dear Mr. Capponi:

Please allow this letter to memorialize our recent telephone conversations regarding your mother, Louise Capponi, as well as the status of the Court's Order with respect to your Commission to act as Guardian, and the amounts currently due and owing for the care and custody of your mother, Louise Capponi, including from the Mayfair House and for New York State and Federal Income Taxes.

As we have discussed, I have been in contact with Richard Wilson the head of Accounts Receivable at the Mayfair House, located in Berryville, Virginia. Mr. Wilson has indicated to me that $13,342 is owed to the Mayfair House for the care of your mother through December 2006. In addition, I have been contacted by your mother's accountant, Jerry Kaufman, who has indicated to me that New York State and/or Federal Income Taxes may be due for your mother's share of the sale of the property formerly owned by the Willow Lane Associates. As per our agreement, and because you have a Power of Attorney over your mother's financial affairs, I will see to it that the Mayfair House is paid directly from that account until this matter is resolved. In addition, I will contact Mr. Kaufman and see to it your mother's interests are protected with respect to New York State and/or Federal Income Taxes which may be owed. In furtherance of our agreement, please sign above your name below, and return this letter to me at your earliest possible convenience.

Very Truly Yours,

Stewart A. McMillan,

_____
John Capponi, on Behalf of his
Mother, Louise Capponi

Jan  2. 2007  9:33AM   MAYFAIR MANAGEMENT

**COUNTRY BANK**
OFFICIAL CHECK

060763

30-1735/016-1

REF. LOUISE CAPRONI

DATE November 17, 2006                    $ ****342.00**

PAY TO THE
ORDER OF    ****** MAYFAIR HOUSE *****************************************

PAY
EXACTLY **313,342.00** cts

DOLLARS
AUTHORIZED SIGNATURE(S)

**COUNTRY BANK**
330 FIFTH AND COURT
NEW YORK, N.Y. 10027

⑈060763⑈  ⑈0310⑈

I

McMILLAN. CONSTABILE. MAKER & PERONE. LLP

THOMAS R. CONSTABILE. JR.
STEWART J. McMILLAN
WILLIAM MAKER, JR.
GARY M. RIKOON
JOHN M. PERONE[1]
WILLIAM J. FOSTER. IV
GARY KYME[2]
PATRICIA G. MICEK
STEWART A. McMILLAN[2]
SALVATORE M. DI COSTANZO[2]

RITA J. MILLER

[1] RETIRED JUDGE OF THE SUPREME COURT
OF THE STATE OF NEW YORK
[2] ALSO ADMITTED IN CONNECTICUT
[3] ALSO ADMITTED IN NORTH CAROLINA
[4] ALSO ADMITTED IN DISTRICT OF COLUMBIA

COUNSELLORS AT LAW
2180 BOSTON POST ROAD
LARCHMONT, NEW YORK 10538

TEL: (914) 834-3500
FAX: (914) 834-0620

CONNECTICUT OFFICE
777 SUMMER STREET
STAMFORD, CT 06901
TEL (203) 325-4276

NORTHERN WESTCHESTER OFFICE
2074 CROMPOND ROAD
YORKTOWN HEIGHTS. NY 10598
TEL. (914) 245-2440

KEITH J. McMILLAN
WILLIAM G. HALBY
RANDLE B. CARPENTER. JR.[3]
CHARLES L. SIDDONS[2]
KATHERINE A. BIALO
RICHARD C. RAYMOND[4]
OF COUNSEL

August 21, 2008

*Via Facsimile (212) 593-1318*
*& Regular Mail*
Edward Cohn (EC-2225)
Irwin, Lewin, Cohn & Lewin, P.C.
845 Third Avenue, Suite 1400
New York, New York 10022

> **Re:**   **United States District Court, Southern District of New York**
> **Capponi v. Murphy, *et al.***
> **Docket No.: 08 Civ. 4449 (LTS) (DFE)**

Dear Mr. Cohn:

Please allow this letter to memorialize our prior telephone calls and to act in response to your letter, dated August 19, 2008.

Firstly, let the record reflect that I do not intend to litigate this matter in correspondence not before the Court. Further, kindly advise me, immediately, and in writing, as to whether your August 19, 2008 letter has been forwarded to the Court. If so, I intend to file this response with the Court as well.

Please allow this letter to also reflect that I am in almost total disagreement with everything contained in your August 19, 2008 letter.

Let me briefly address some of the points which you make in your letter:

Firstly, the counterclaim is silent as to in which capacity claims are being asserted against John Capponi.

Secondly, as you know, we have discussed, *ad nauseaum*, the parties' respective differences as to the appropriate venue for this matter. Your airing some of these differences in a letter is not going to make my clients change their collective minds.

It is my clients' position, as set forth in our prior letters to the Court, that the Virginia Court does not have jurisdiction over the monies which are the subject of this action.

With respect to the prior guardianship proceeding, I did not have substantive discussions of any kind with John Capponi and, therefore, do not believe that I am in any way a witness to any issue material to this suit.

Moreover, it was my understanding that a part of the reason that my clients consented to your request for the August 29, 2008 adjournment (for additional time to respond to the defendants' counterclaim) was in return for your reciprocal consent to my clients' request for additional time to amend the counterclaim, should we deem that to be necessary. It was my belief that we did not get into that discussion because we agreed it was in all parties' best interests to see if this matter could be resolved amicably, via a settlement.

Finally, I am in complete agreement with you that a settlement would be beneficial for all parties. I have discussed the matter with Louise Capponi's accountant, Jerry Kaufman. His file reflects that he did do a calculation of the amount owed in taxes as of 2005 (shortly after the sale of the Willow Lane Real property).

At that time, he calculated approximately $55,000 dollars owed in Federal Taxes and approximately $30,000 dollars owed in New York State Taxes. We would be happy to place whatever money is necessary into escrow pending a resolution by the parties.

It is his further opinion that the amount currently owed could be as much as $40,000 dollars in excess of that, including interest and penalties. Mr. Kaufman would be willing to do a more definitive breakdown upon the parties' request.

Kindly contact me at your earliest convenience to discuss this matter.

Very Truly Yours,

Stewart A. McMillan, Esq.