UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOHN B. CAPPONI as Administrator of the Estate of LOUISE THERESA CAPPONI,

Plaintiff,

-against-

JOANN M. MURPHY, WILLOW LANE ASSOCIATES, LP, DENNIS CAPPONI and COUNTRY BANK,

Defendants.
--------------------------------------------------------------------X

**ECF CASE**

Case No.:
08 Civ. 4449(LTS)(DFE)

**MEMORANDUM OF LAW**

EDWARD COHN, ESQ. (EC-2225)
IRWIN, LEWIN, COHN & LEWIN, P.C.
Attorneys for Plaintiff
JOHN B. CAPPONI
as Administrator of the Estate of
LOUISE THERESA CAPPONI
845 Third Avenue, Suite 1400
New York, New York 10022
(212)759-2600

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................ii

STATEMENT OF FACTS ........................................1

PRELIMINARY STATEMENT ........................................1

ARGUMENT ........................................2

POINT I THIS COURT SHOULD DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6) and 12(b)(1)........................................2

A. The Counterclaims Are Asserted Against A Non-Party........................................2

B. There Is An Action Pending In The State Of Virginia Addressing The Same Issues Raised In The Counterclaims........................................2

POINT II DISQUALIFICATION OF DEFENDANTS' COUNSEL NECESSARY........................................3

A. Defense Counsel Must Be Disqualified As Defendants Have Conflicting Interests........................................3

B. Defense Counsel Must Be Disqualified As He Will Be Called As A Witness........................................7

POINT III CONCLUSION........................................10

# TABLE OF AUTHORITIES

**Cases** **Page**

Antonaccio v. Board of Educ. of Arlington Cent. School Dist., 281 F.Supp.2d 710 (S.D.N.Y., 2003)........................................... 3

Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (1979)...............................................5, 6

Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 761 (1990)...................................................5, 6

Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 564-65 (2d Cir., 1973) ..........................................6

Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir., 1986) ........................................... 3

Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 233, 234 (2d Cir., 1977) .........................................6

Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir., 1978) .......................................5, 6

Hull v. Celanese Corp., 513 F.2d 568, 571 (2nd Circ., 1975) ..............................................7

Kalina v. Fletcher, 522 U.S. 118, 130, 118 S.Ct. 502 (1997) .....................................7

Lambom v. Dittmer, 873 F.2d 522, 531 (2d Cir., 1989) ..............................................8

Lefkowitz v. Bank of New York, 528 F.3d 102 (N.Y., 2007) ..................................................... 2

Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.,
804 F.2d 16, 19 (2d Cir., 1986) ....................................3

United States v. Kliti,
156 F.3d 150, 156 n. 8 (2d Cir., 1998) ....................................8

**Statutes**

Federal Rule of Civil Procedure 12(b)(1) ....................................1, 2

Federal Rule of Civil Procedure 12(b)(6) ....................................1, 2, 3

Code of Professional Responsibility,
EC 5-14 ....................................6

Code of Professional Responsibility,
EC 5-15 ....................................6

Code of Professional Responsibility,
EC 9 ....................................6

ABA Code of Professional Responsibility,
Disciplinary Rule 5-102(A) ....................................7

New York Code of Professional Responsibility,
Disciplinary Rule 5-102(c) ....................................7

## STATEMENT OF FACTS

The facts pertinent to this Memorandum of Law are contained in the Declaration of Edward Cohn, Esq., dated August 28, 2008, (hereinafter, "Cohn Declaration") and, thus, Plaintiff shall not burden this Court by repeating them herein. Moreover, capitalized terms herein shall have the same meaning ascribed to them as those contained in the Cohn Declaration.

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Plaintiff's motion to dismiss Defendants' counterclaims pursuant to FRCP 12(b)(1) and 12(b)(6). Additionally, Plaintiff seeks to have Defendants' counsel, Stuart A. McMillan disqualified from this action as Defendants (a) have conflicting interests and (b) defense counsel will be called as a witness in this proceeding.

Prior to her death, Louise Capponi had a 20% partnership interest in WILLOW ASSOCIATES entitling her, according to Defendants to at least $216,000. (See, Exhibit B, pg. 10, ¶35) The issues raised in this proceeding involve the value of Decedent's 20% interest in WILLOW ASSOCIATES and Defendants' conversion of that interest. However, Defendants have attempted to obfuscate these issues by alleging in their six counterclaims that during the course of Louise Capponi's lifetime, her son and caregiver John Capponi took monies belonging to his mother. Plaintiff, as the Administrator of the Estate of Louise Theresa Capponi, is entitled to and obligated to gather Decedent's assets and administer her Estate.

## ARGUMENT

### I. THIS COURT SHOULD DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6) and 12(b)(1)

#### A. The Counterclaims Are Asserted Against A Non-Party

Defendants' bold conclusory counterclaims against John Capponi are nothing more than a desperate attempt to avoid payment of monies that belong to Decedent's Estate. A reading of the factual allegations against John Capponi, as set forth in Defendants' counterclaims reveal that all of the allegations refer to acts of John Capponi during Louise Capponi's lifetime and not the actions of Louise Capponi or the Administrator of the Estate. (See, Exhibit B, pgs. 11-12, ¶¶ 41-54) As the Plaintiff in this action is "John Capponi, as Administrator of the Estate of Louise Capponi," not John Capponi, individually, any claims against John Capponi for allegedly misappropriating monies from Decedent during her lifetime must be brought in the Estate proceeding commenced in Virginia, more than one year ago. (See, Exhibit D)

#### B. There Is An Action Pending In The State Of Virginia Addressing The Same Issues Raised In The Counterclaims

The Circuit Court of Clarke County, Commonwealth of Virginia acquired jurisdiction over the Estate of Louise Capponi on May 16, 2007 when it qualified John Capponi as the Administrator of the Estate, therefore, Defendants cannot assert the instant counterclaims in this Court. (See, Exhibit D)

This Court lacks subject matter jurisdiction to hear Defendants' counterclaims because a decision of this Court would interfere with Virginia Court's control over Decedent's Estate. The "probate exception" reserves to state probate courts the administration of a decedent's estate. Lefkowitz v. Bank of New York, 528 F.3d 102 (N.Y., 2007) Moreover, Defendants have failed

to assert a basis for jurisdiction as a result of federal question jurisdiction or diversity jurisdiction. Thus the counterclaims must be dismissed as this Court lacks subject matter jurisdiction.

Furthermore, under FRCP 12(b)(6), the Court has discretion to dismiss an action before it if there exists another pending action addressing the same issues. Antonaccio v. Board of Educ. of Arlington Cent. School Dist., 281 F.Supp.2d 710 (S.D.N.Y., 2003)

If there are two lawsuits concerning the same parties and the same issues, priority should be given to the first suit, absent special circumstances that would justify giving priority to the second. Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir., 1986) citing, Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir., 1986) Practical considerations require a court to dismiss a second action if "an identity of issues exists and the controlling issues in the dismissed action will be determined in the other lawsuit." Antonaccio v. Board of Educ. of Arlington Cent. School Dist., 281 F.Supp.2d 710 (S.D.N.Y., 2003)

The Virginia action and the instant counterclaims involve the same issue, administration of Decedent's Estate. However, the Virginia action was brought prior to Defendants' counterclaims therefore any claims against John Capponi, involving assets of his mother during her lifetime, must be brought in the Virginia Court and the counterclaims must be dismissed.

## II. DISQUALIFICATION OF DEFENDANTS' COUNSEL IS NECESSARY

### A. Defense Counsel Must Be Disqualified As Defendants Have Conflicting Interests

Notwithstanding the fact that the Defendants have conflicting interests and inconsistent defenses, the law firm of McMillan, Constabile, Maker & Perone, LLP, has appeared in this

action on behalf of all four Defendants. One example is the glaring conflict involving Defendant, DENNIS CAPPONI, a distributee of Louise Capponi, who will benefit from the recovery of monies belonging to the Estate from the remaining Defendants.

Additionally, notwithstanding the fact that Defendants concede that Louise Capponi was entitled to receive her 20% share of the proceeds from the sale of WILLOW ASSOCIATES, which they claim is worth $216,000, they have continued to play "hide and seek" as to its whereabouts, even after her death. (Exhibit B, pg. 10, ¶35) JOANNE MURPHY, as general partner of WILLOW ASSOCIATES swore under oath that she gave a check for $216,000 rightfully belonging to Decedent to Defendant, DENNIS CAPPONI; and that the $216,000 was deposited into an interest bearing account at Defendant, COUNTRY BANK. (See, "Exhibit C" ¶¶ 24, 31 and 32)

William J. Burke, the President of COUNTRY BANK, has stated, "We have checked our files and have no account under the name of Louise T. Capponi." (See, Exhibit A, ¶ 31 and Exhibit B, pg. 2, ¶ 5) Interestingly, JOANN MURPHY's husband, Joseph M. Murphy is the Chairman and a shareholder, owner, officer and director of Defendant COUNTRY BANK. (See, Exhibit A, ¶ ¶ 27 & 28 and Exhibit B, pg. 2, ¶ 5)

Antonette Polcini, sister of Decedent and JOANNE MURPHY, also swore under oath that JOANN MURPHY gave the check to DENNIS CAPPONI and that the check was deposited into an interest bearing account at COUNTRY BANK. (See, Exhibit E, ¶31)

DENNIS CAPPONI, swore under oath that he received a check made payable to his mother in the sum of $216,000, but that did not deposit the check into an escrow account and he did not give the check to his mother. (See, Exhibit F, ¶¶25-26)

As general partner of WILLOW ASSOCIATES, JOANN MURPHY has a fiduciary duty to establish the location of the proceeds of the sale of the Premises and to insure that the rightful owner of the funds receive same. Individually, JOANN MURPHY has a conflict with DENNIS CAPPONI because she swore that she gave him the funds to deposit in COUNTRY BANK. (See, Exhibit C, ¶¶ 31 & 32) DENNIS CAPPONI has a conflict with the other Defendants because as a distributee of Decedent's Estate, he will directly benefit from funds recovered on behalf of the Estate. While COUNTRY BANK has never claimed an interest in the monies belonging to the Estate of Louise Capponi, they clearly have conflicting interests with their co-Defendants. Under this set of facts it is appropriate that cross claims would be asserted by the Defendants, however no cross claims have been asserted.

Only recently has it become evident that the actions of Defendants and their counsel, Stewart McMillan, in failing to turn over the proceeds belonging to Louise Capponi, and their failure to pay Federal and New York State income taxes on the capital gain, has resulted in penalties and interest to the Estate of Louise Capponi according to the accountant for WILLOW ASSOCIATES and Louise Capponi, in the a sum of approximately $40,000. (See II (B), below) It is inconceivable that Defendants' counsel can assert that his clients do not have conflicting, diverse or inconsistent interests.

Judges have the power to disqualify counsel when disqualification is necessary to preserve the integrity of the adversary process in actions before them. Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (1979); Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 761 (1990).

In exercising this power, the courts attempt to balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." Gov't of India

v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir., 1978); See also, Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 564-65 (2d Cir., 1973).

Disqualification has been ordered "where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client." Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (1979); Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759 (1990); Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 233, 234 (2d Cir. 1977)

Code of Professional Responsibility, EC 5-14 states:

* * *

> Maintaining the independence of professional judgment required of a lawyer precludes acceptance or continuation of employment that will adversely affect the lawyer's judgment on behalf of or dilute the lawyer's loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Code of Professional Responsibility, EC 5-15 states:

> If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, the lawyer must weigh carefully the possibility that the lawyer's judgment may be impaired or loyalty divided if the lawyer accepts or continues the employment. The lawyer should resolve all doubts against the propriety of the representation. **A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which the lawyer would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, the lawyer would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that the lawyer refuse the employment initially.** Emphasis added.

* * *

Code of Professional Responsibility, EC 9 states: an "attorney must avoid even the appearance of impropriety"

For the reasons set forth hereinabove, it is submitted that the Court should disqualify defense counsel from representing the Defendants herein.

**B. Defense Counsel Must Be Disqualified As He Will Be Called As A Witness**

It is axiomatic that an attorney cannot simultaneously represent his client as an advocate and serve as a witness at the same trial. Kalina v. Fletcher, 522 U.S. 118, 130, 118 S.Ct. 502 (1997); Lambom v. Dittmer, 873 F.2d 522, 531 (2d Cir., 1989); United States v. Kliti, 156 F.3d 150, 156 n. 8 (2d Cir., 1998).

Disciplinary Rule 5-102(A) of the ABA Code of Professional Responsibility and Disciplinary Rule 5-102(c) of the New York Code of Professional Responsibility govern when a lawyer, who may be called as a witness, should withdraw from further representation of his client. The ABA Disciplinary Rule states that "[i]f ... a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial." ABA Code of Prof. Responsibility, DR5-102(A).

Similarly, under the New York Code of Professional Responsibility, if "a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal." N.Y.Code of Prof. Responsibility, D.R.5-102(c)

When there is a question as to whether an attorney will be called as a witness on behalf of his or her client, any doubt is to be resolved in favor of disqualification. Hull v. Celanese Corp., 513 F.2d 568, 571 (2nd Circ., 1975) When faced with an attorney as a sworn or unsworn witness,

the proper recourse is to disqualify the attorney, not to exclude the testimony. United States v. Kliti, 156 F.3d 150, 156 (2d Cir., 1998)

When a lawyer ought to be called as a witness and if the attorney's testimony could be significantly useful to his client, the attorney should be disqualified regardless of whether he will actually be called. Lamborn v. Dittmer, 873 F.2d 522, 531 (1989). The party cannot choose between the attorney's testimony and his representation. United States v. Kliti, 156 F.3d, 150, 156 (2d Cir., 1998)

Mr. McMillan has intimate knowledge of Decedent's financial affairs and the apparent wasting of her assets by Defendants. Further, as a result of discussion and negotiations he had with John Capponi both during and after the Article 81 proceeding, there are other issues on which he will be called to testify.

Prior to Louise Capponi's death, in a letter dated November 17, 2006, Mr. McMillan assured John Capponi that he would "see to it that the Mayfair House (Decedent's nursing home) is paid..." and that he, "will contact Mr. Kaufman and see to it your mother's interests are protected with respect to New York State and/or Federal Income Taxes which may be owed." (See, Exhibit H)

Notwithstanding Mr. McMillan's representation in his November 17, 2006 letter that he and the accountant would see to it that the taxes in connection with the sale of the Premises would be paid, in a second letter on August 21, 2008, Mr. McMillan related for the first time that the taxes were never paid. (See, Exhibits H & I) Mr. McMillan wrote that presently $55,000 in federal taxes, $30,000 in state taxes and $40,000 in penalties and interest was owed. (See, Exhibit I)

Mr. McMillan will be called as a witness in connection with the failure of WILLOW ASSOCIATES, JOANN MURPHY, DENNIS CAPPONI and COUNTRY BANK and their attorney to distribute the proceeds of the sale of WILLOW ASSOCIATES, to pay the taxes due and the incurring of significant penalties for their failure to do so. As a result of the disclosures contained in Mr. McMillan's letter of August 21, 2008, Plaintiff is actively considering options including whether additional parties should be joined as Defendants in this proceeding.

Mr. McMillan as counsel for WILLOW ASSOCIATES will also be called as a witness based on his ongoing conversations with Jerry Kaufman, the accountant for WILLOW ASSOCIATES and Decedent regarding the chain of custody of Louise Capponi's funds, the location of the monies and communications with John Capponi. (See, Exhibits H & I)

Mr. McMillan will also be called as a witness as a result of Defendants' allegations in connection with the state court Article 81 guardianship proceeding that John Capponi intentionally failed to be bonded because he did not wish to file periodic accountings. (See, Exhibit B, pg.10 ¶33) The real reason John Capponi never became Decedent's guardian was that upon receipt of the Order of the Court, John Capponi learned for the first time that the filing of a bond in the sum of $219,111.32 was a condition precedent to his appointment. (See, Exhibit G, pg 3) It is John Capponi's contention that the bond was never discussed in Court. Further, if the $219,111.32 bond was in fact discussed, John Capponi would have never agreed to become Decedent's guardian because he could not comply with the condition. Upon information and belief, the Order was drafted by Mr. McMillan. Mr. McMillan was present during the Article 81 proceeding and will be called as a witness to testify about the alleged discussions relating to the bond.

For the foregoing reasons, it is submitted Mr. McMillan should be disqualified as counsel for Defendants due to the irreconcilable conflicts between the Defendants and as an independent and separate ground, due to the fact that he will be called as a witness in this action.

## III. CONCLUSION

Based upon the foregoing, it is abundantly clear that Defendants' counterclaims should be dismissed pursuant to 12(b)(1) and 12(b)(6). John Capponi is not a party to this action and under controlling law this Court does not have subject matter jurisdiction over the administration of Louise Capponi's Estate. Furthermore, Stuart A. McMillan, Esq. should be disqualified from representing the Defendants because the Defendants have conflicting interests and Mr. McMillan will be called as a witness in this action.

Dated: New York, New York
August 28, 2008

Respectfully submitted,

By: IRWIN, LEWIN, COHN & LEWIN, P.C.

S/

Edward Cohn, Esq. (EC-2225)
Attorneys for Plaintiff
JOHN B. CAPPONI as Administrator of the Estate of LOUISE THERESA CAPPONI
845 Third Avenue, Suite 1400
New York, New York 10022
(212) 759-2600